## CASHEN *v.* SOUTHERN MUTUAL BUILDING AND LOAN ASSOCIATION *et al.*

One who purchases from a building and loan association "fully-paid stock" upon which he is to receive a "guaranteed dividend" at a named rate per cent., payable at fixed times, and who is not entitled to "participate in further profits," is, though his right to demand payment is not to become absolute until he shall, after the expiration of a stated period, have given a specified notice, nor until there shall be in the treasury of the association a sufficiency of assets derivable from a designated source to pay him in full, in all substantial respects a creditor of the association and entitled to be dealt with as such in an equitable distribution of its assets; and this is so without re-

gard to the above-mentioned conditions as to payment, if such distribution be brought about without fault on the part of the holder of such "stock."

Argued February 20,—Decided March 12, 1902.

Exceptions to auditor's report. Before Judge Lumpkin. Fulton superior court. June 28, 1901.

*Henry A. Alexander*, for plaintiff in error. Fully-paid stock a debt, and entitled to be paid in preference to instalment stockholders: *Cook* v. *Equitable B. & L. Asso.*, 104 *Ga.* 814, 829; *Savannah Real Estate, Loan & Building Co.* v. *Silverberg*, 108 *Ga.* 281, 289. In re Guardian etc. Soc., 23 Ch. Div. 464; People ex rel. Fairchild, 140 N. Y. 549, s. c. 24 L. R. A. 57; Munhall *v.* Boedecker, 44 Ill. App. 131; Dickinson *v.* Continental Trust Co., 52 N. Y. Supp. 672, s. c. 23 Misc. Rep. 489; Commonwealth *v.* Anchor B. & L. Asso., 10 Pa. Dist. Rep. 167; Heptasoph Asso. *v.* Linhart, 4 Pa. Dist. Rep. 620; Thompson, B. & L. Asso. (2d ed.) § 128. Association can borrow money from third person to pay withdrawals, or maturing stock: North Hudson Asso. *v.* Bank, 79 Wis. 31, s. c. 47 N. W. Rep. 303. A stockholder may become a creditor: *Totten* v. *Tison*, 54 *Ga.* 139. Inherent nature of building and loan association constitutes holder of matured or fully paid stock a creditor: *Cook* v. *B. & L. Asso.*, 104 *Ga.* 814(1); *Van Pelt* v. *B. & L. Asso.*, 87 *Ga.* 370; Thompson, B. & L. Asso. (2d ed.) § 132, pp. 254, 255, 258; Thornton & Blackledge, B. & L. Asso. § 330; Endlich, B. & L. Asso. §§ 117, 490, and citations; Eversman *v.* Schmitt, 53 Ohio St. 184, s. c. 41 N. E. 139; Mechanic's etc. Asso. Appeal, 7 Atl. 728; Charles Tyrell Asso. *v.* Haley, 163 Pa. St. 301, s. c. 30 Atl. 154; North Hudson Asso. *v.* Bank, 79 Wis. 31, s. c. 47 N. W. 300. Contract to be so construed as to uphold, rather than destroy it: Civil Code, § 3675, par. 3; Best, Ev. (1st Am. ed.) §§ 346, 347. Intention of parties to be sought: Civil Code, § 3673. Criminal to declare dividend unless legitimate proceeds of investment: Penal Code, § 691. Performance of condition rendered impossible by act of the law is excused: *Macon Co.* v. *Gibson*, 85 *Ga.* 1, 17, and citations. Insolvency and receivership do not destroy existence of corporation, nor its rights and duties: *Hollifield* v. *Wrightsville R. Co.*, 99 *Ga.* 365, 370. The *Cook* case has been followed, with reference to the question of the effect of "paid up" or investment "stock" upon the character of the association, in *White* v. *B. & L. Asso.*, 106 *Ga.* 150, 151; *Burns* v. *B. & L. Asso.*,

108 *Ga.* 181, 183; *Angier* v. *B. & L. Asso.*, 109 *Ga.* 625, 628. It is cited in *Savannah etc. Co.* v. *Silverberg*, 108 *Ga.* 281, 289; *Union Savings Bank* v. *Dottenheim*, 107 *Ga.* 606, 624; *So. Home B. & L. Asso.* v. *Pace*, 110 *Ga.* 614; *Smith* v. *B. & L. Asso.* 111 *Ga.* 811.

*W. D. Ellis* and *Lumpkin & Burnett*, contra. The stock in question is not even preferred. There is no authority in the charter or in any by-law for such a preference. The contract as contended for by plaintiff in error, even if made, is void. If it can be considered preferred stock, the preference is only that dividends shall be paid when there are profits to pay them with; not in the event of insolvency: 1 Cook, Stock (3d ed.), § 271; Sumrall *v.* Columbia Co. (Ky.), 50 N. W. 69, s. c. 44 L. R. A. 659; Towle *v.* B. & L. Asso., 75 Fed. 398; Latimer *v.* Equitable Loan Co., 81 Fed. 776; State *v.* Equitable Loan Co., 142 Mo. 325, s. c. 41 S. W. 916; Forwood *v.* Eubanks (Ky.), 50 S. W. 255; Leahy *v.* Nat. B. & L. Asso., 100 Wis. 555, s. c. 76 N. W. 625; Gibson *v.* Safety Asso., 170 Ill. 44, s. c. 48 N. E. 580; Endlich, B. & L. Asso. § 464; 7 Thomp. Corp. § 8761; Heinbokel *v.* National L. & B. Asso., 58 Minn. 340, s. c. 25 L. R. A. 215. Preferred stockholder not considered a creditor: *Totten* v. *Tison*, 54 *Ga.* 139. Doctrine that stockholder seeking to withdraw must show that there are funds with which to pay him is recognized in *Crittenden* v. *B. & L. Asso.*, 111 *Ga.* 266. The *Silverberg* case, 108 *Ga.* 281, and the *Cook* case, 104 *Ga.* 814, are distinguishable from this case.

LUMPKIN, P. J. The assets of the Southern Mutual Building & Loan Association were, on February 5, 1897, upon an equitable petition, placed in the hands of receivers, for administration and distribution. The case was referred to T. A. Hammond, Esq., as auditor, who passed upon the various issues arising in the litigation thus inaugurated, and, in due time, filed his report. It appears that at least two classes of persons held what may be termed "stock certificates" in the association. To one of these classes belonged those who undertook to mature their stock in the association by paying in monthly installments upon the usual building and loan plan. To the other class belonged T. V. Cashen Jr., the plaintiff in error. He held a certificate of which the following is a copy: "Southern Mutual Building and Loan Association of Atlanta. This certifies that T. V. Cashen Jr., of Jacksonville, State of Florida, is

a stockholder of the Southern Mutual Building and Loan Association of Atlanta, Ga., and has subscribed for, and is the owner and holder of six and one half shares of fully-paid stock, Class D, of the par value of one hundred dollars per share, for which six hundred and fifty dollars has been paid. This certificate is issued to and accepted by the holder hereof upon the terms and conditions set forth in the by-laws of said Association. Given under the seal of said Association, at Atlanta, Ga., this 17th day of November, 1896. [Signed] Henry L. Atwater, V. President. H. P. Williams, Secretary." Upon this certificate was printed the following words: "Fully paid stock shall be sold for one hundred dollars per share. This stock shall bear a seven per cent. guaranteed dividend, payable three and one half per cent. semi-annually. This stock can be withdrawn at any time after one year from the date thereof, under the usual conditions of withdrawal, upon giving sixty days notice in writing to the home office, and the holder shall be entitled to receive one hundred dollars per share thereon, the dividends having been paid previously. In consideration of the guaranteed dividend of seven per cent., the purchaser waives all participation in further profits, and agrees to accept the face value of the stock upon withdrawal. The directors may require any certificate to be withdrawn after three years." Cashen filed an intervention in which he claimed "that, under the terms of the certificate issued to him, he was a creditor of the association for the par value of his certificate with 7% interest per annum from January, 1897, until paid, and entitled to a priority in the distribution of the assets over the ordinary installment stock." The auditor sustained Cashen's contention, and recommended a judgment in his favor for the principal sum mentioned in his certificate, with interest as claimed. An exception to this ruling, made by the association, was sustained by the trial judge, and this is the only error assigned in the bill of exceptions now before us. Apparently all persons other than the holders of certificates issued by the association, having claims of any kind against it, were paid in full. The bill of exceptions recites that the corporation was a building and loan association conducted on the usual plan, and that its business as such was carried on continuously until the appointment of the receivers. In January, 1897, Cashen received the sum of $5.50 as a dividend for the period which had elapsed since the issuance of his certificate. This was the last and only payment made to him.

The following is an extract from the charter of the association: "The object of said Association shall be pecuniary profit for its stockholders; the accumulation of a fund which shall be paid in monthly installments by the stockholders, lending the same on real estate, personal or other acceptable security to the members of said Association, or to persons not members thereof, taking deeds, mortgages, executions, or other liens, or personal securities therefor; to sell or dispose of all such securities or any part thereof, if deemed advisable; to make, issue, and sell bonds or other obligations based on the security of property held by the Association; to buy, sell, own, and deal in any real or personal property; to improve any such real estate by erecting buildings, machinery, or other appliances for increasing the value thereof; to sell the same for cash or on installments, and do all other things necessary and lawful in the prosecution of said business and the proper management thereof; to have and use a common seal, to sue and be sued, to plead and be impleaded, to contract and be contracted with; to have such other powers and do such other acts as are usual and proper to carry out the intent, design, and purpose of said Association." It did not appear, however, that the association engaged in any business not consistent with that of a building and loan association "pure and simple." On March 10, 1892, the directors passed the following resolution: "The committee, to whom was referred the report for further action, recommend that a fully-paid certificate of $100.00 each be issued at par, bearing a 7% guaranteed dividend. This stock to waive all right to participate further in the profits by reason of the guarantee. To be allowed to withdraw on 60 days notice, after one year, under the usual conditions as to withdrawals."

The following are sections of the by-laws of the association:

"Article 1. Section 3. The capital stock of this Association shall consist of fifty thousand shares of the par value of $100.00 each at maturity, to be paid in monthly installments of such sums as the board of directors may fix, until the maturity of the stock.

"Article 1. Section 4. The capital stock of this Association may also consist of twenty-five thousand shares of the par value, at maturity, of $100.00 each, of fully-paid stock to be sold upon such terms and at such rates of interest as the board of directors may determine. The fully-paid stock shall at no time exceed one half of the amount of the installment stock in force.

"Article 4. Section 1. Once a year, and oftener if desired, the profits arising from the business shall be equitably apportioned upon the books of the Association to each share. Whenever the amount to the credit of any shares, consisting of the monthly dues paid and the profits apportioned, shall equal one hundred dollars, such shares shall be deemed matured, and such amount may be paid upon the surrender and cancellation of the certificate of stock.

"Article 4. Section 6. If any member dies, his legal representatives may withdraw his shares at any time and receive the money paid as dues on such shares. In no other case can a share be withdrawn until after one year from the date of the certificate. At any time after one year, and before two years, the certificate may be returned and the member will be entitled to receive for each share the money paid as dues. At any time after two years and before the maturity of the stock, the certificate may be returned and the member will be entitled to receive on such shares the amount paid as dues and such interest thereon as the board of directors may from time to time determine that the series of stock to which the withdrawing member belongs is entitled for each of the several years up to maturity, provided the same shall not be less than 6 per cent. interest for the average time upon the amount paid into the loan fund. No certificate can be withdrawn unless paid to date. A withdrawal fee of one dollar per share may be charged on all stock withdrawn. A member desiring to withdraw his shares must give the Association sixty days notice of such withdrawal. Without the consent of the directors, the Association can not be required to use more than half the money received from monthly payments in any one month in the payment of withdrawing and maturing stock. Members who have obtained loans can not withdraw their shares until the loan is paid.

"Article 5. Section 6. Each shareholder shall be entitled to one vote for every share held by him or her, either in person or by proxy, at any regular or called meeting. Notice of any stockholders' meeting shall be sent by mail to the president or secretary of each local board, ten days prior to the meeting. No one shall be eligible to vote in any election, unless all dues are paid to date, and no one shall be eligible to hold proxies unless a stockholder in good standing. The books for transfer of stock shall be closed thirty days prior to the election for board of directors, except for transfer of stock for loans."

No notice of withdrawal was given the association by Cashen upon his certificate. The case upon the facts stated above, therefore, turns upon and is controlled by the determination of the following question : Was Cashen, relatively to the ordinary shareholders in the association, entitled to be treated as a creditor, or did he stand on the same footing with those shareholders in the distribution of the assets of the association ? His honor below took the latter view, but in our opinion the same was erroneous. In other words, we agree with the ruling upon this matter which was made by the auditor, and which in our judgment ought to have been sustained. This court is committed to the principle laid down by it in the case of *Cook* v. *Equitable Assn.*, 104 *Ga.* 814, according to which Cashen's real attitude to the association was that of a creditor, and not a stockholder, notwithstanding the fact that in the certificate issued to him he was designated as a "stockholder," and therein declared to be the owner of "stock" in the concern. It was, in the case cited, distinctly held that the issuing of "coupon stock" in all material respects identical with that issued to Cashen, and the sale of the same for cash to the holder, was "simply a borrowing of money by the association." Though it does not appear in the official report of the *Cook* case, there was in the by-laws of the Equitable Building and Loan Association the following provision : "The association shall not be bound to apply to the settlement of withdrawing stock more than one half the amount received from monthly dues in any one month." As will have been seen, one of the by-laws of the association whose affairs are now under consideration declares that, "without the consent of the directors, the Association can not be required to use more than half the money received from monthly payments in any one month in the payment of withdrawing and maturing stock." Plainly, then, the by-laws of the two associations, in so far as they relate to settling with withdrawing certificate-holders, are in substance the same, save that in the latter a greater proportion of the money received from the monthly payments might, with the consent of the directors, be thus applied. The reasoning of Mr. Justice Lewis in the *Cook* case demonstrates, we think, that the true relation between the holder of a certificate like that now under consideration, and the association, is neither more nor less than that of creditor and debtor. Under the contract between Cashen and the Southern Mutual Building and Loan Association, it owed him

$650.00 as a loan, the interest on which was payable semi-annually at fixed times, to wit, January 1 and July 1 of each year, at the designated rate of seven per cent. He had no interest in the profits of the association, and was not concerned as to its losses save only as they might impair its ability to meet its obligation to him. It makes no difference that he was termed a "stockholder," and that his interest was designated as "stock." The law cares nothing for mere names. It looks to the substance of things. In this connection it is important to remember that fully-paid up stock in a building association is really an anomaly. Strictly speaking there can be no such thing; for the moment stock as such is matured— that is, brought to its par value—the holder thereof is entitled to his money, and his connection with the association ceases. As will have been observed, one of the by-laws provides that "each shareholder shall be entitled to one vote for every share held by him or her, either in person or by proxy, at any regular or called meeting." It was thereupon insisted that Cashen must be a stockholder, because he had the right to vote his stock in the meetings of the association. This depends at last upon whether he was a shareholder or not. It will be noticed that his certificate does not, in terms, confer any voting privilege or right. It evidences his true relation to the association, whatever that was, and does nothing more. If this relation was that of shareholder, the by-law from which we have just quoted applied to him. If he was not a shareholder, it did not. Its existence therefore adds nothing to and detracts nothing from the argument on either side of the question.

It was urged that Cashen's claim against the association could not be treated as a debt, for the reason that it had no fixed maturity. Under the by-laws it was within the power of the association to mature his claim, at its option, at any time after the expiration of three years; or it was the right of Cashen, at any time after the expiration of one year, on sixty days notice, to demand payment of his certificate. It will not do to say that a demand is not a debt merely because the time of its payment depends upon stated contingencies; nor is it fair to Cashen to defeat his claim as a creditor because he failed to give the sixty days notice required by the by-law. This he could not possibly have done, because very soon after he received the stock the assets of the association were placed in the hands of receivers. Surely it would never do to hold that be-

cause Cashen was thus prevented from exercising the right given him by his contract, his true relation to the association was, without fault or negligence on his part, completely altered, and that as a consequence he was placed in a position less advantageous than he otherwise would have occupied. It was also urged that as the claim of Cashen was payable only out of particular assets, to wit, not exceeding one half the premiums paid in monthly by borrowing members, unless by consent of the directors a greater portion of such premiums could be thus appropriated, he could not be regarded as a creditor without showing that at the time of demanding payment the assets derivable from the source indicated were on hand and ready for disbursement. We can not assent to the correctness of this contention. A claim payable out of particular assets when realized is none the less a debt because at a given time such assets may not actually be in the debtor's hands. A creditor in this position simply holds a demand with conditions as to the manner in which it is to be discharged. We are prepared to admit that if the association had remained a going concern, Cashen could not, even after the expiration of a year, and after giving the required notice, have maintained an action at law for the recovery of his claim or debt without showing that at the time of bringing suit there actually was in the company's treasury enough from the sources indicated to pay him in full. But it is, we think, equally true that he might, by instituting a proper equitable proceeding, have obtained a decree impounding assets liable for the payment of his certificate until enough for this purpose could be realized by the association. He was, at the time of entering into the contract evidenced by that certificate, either a creditor or he was not. If a creditor, the suspension of business by the association, whether voluntary or enforced, could not change his relation to it. If he began as a creditor he remained one to the end; and when a court of equity undertook to wind up the business and distribute the assets of the association, Cashen was entitled to be dealt with from the standpoint fixed by his contract.

In the briefs filed by the able counsel on both sides many authorities pro and con were cited. We do not care to discuss them in detail, for we recognize that there is a decided contrariety of judicial opinion with respect to the controlling question involved in the present case. Some of the decisions, apparently contrary to the

view taken by us, are based on local statutes, or else upon charter provisions and by-laws differing from those of the association now under consideration. This statement, however, we candidly admit, does not by any means explain away the conflict referred to above. This court was, when it undertook to deal with the *Cook* case, under the necessity of taking position one way or the other upon the question at issue. We then held that the holder of a certificate like that of Cashen was a creditor of the association. To this view we have adhered in later cases, and are content with its correctness. Applying to the case in hand the doctrine to which we stand committed, it necessarily results that the judge erred in setting aside the auditor's ruling on the point in controversy.

*Judgment reversed. All the Justices concurring, except Little, J., absent.*