# PARKER *v.* HEALD.

VOLUNTARY ASSOCIATIONS; PARTNERSHIP; PARTIES, NONJOINDER OF;
PLEADING; DEATH; BUILDING ASSOCIATIONS; CONTRACTS.

1. Members of an unincorporated building association are partners, and,
as such, liable to the creditors of the association.    (Following *Norwood*
v. *Francis,* 25 App. D. C. 471.)

2. An action is maintainable against some of the members of a partner-
ship, unless they plead in abatement the nonjoinder of their copart-
ners; and such a plea must set forth the names of all the partners,
so as to give the plaintiff a better writ.

3. Where the president and treasurer of an unincorporated building asso-
ciation redeem their stock by taking real estate from the association
in accordance with a provision of its constitution that stock may be
canceled by the purchase of property from the association, but con-
tinue in office, they still remain members of the association, and liable,
with their associates, to its creditors.

4. The death of a member of a voluntary association terminates his
partnership therein, and, in the absence of any provision to that
effect, the person who succeeds to his interest does not become a
partner.

5. The holder of a certificate, called a certificate of stock, in an unin-
corporated building association, the capital stock of which is of the
par value of $100 a share, reciting that he is entitled to six shares
of special stock, redeemable in five years at its face value, with 6
per cent interest, issued in return for $600 paid by him to the asso-
ciation, is a creditor of the association, and not a stockholder,
where the certificate, unlike the regular certificates of stock issued
by the association, is transferable by mere indorsement without
surrender, and the holder is not entitled to dividends, although it
appears that the holders of similar certificates have been allowed,
notwithstanding a provision of the constitution impliedly prohibiting
them from voting, to participate in meetings of the stockholders.

6. A claim upon a voluntary association, payable out of a sinking fund
when accumulated, is none the less a debt of the association because
at a given time such assets may not actually be in the debtor's
hands.  A creditor in this position holds a demand conditioned as to
the manner in which the claim is to be discharged.

No. 1714.  Submitted December 13, 1906.  Decided February 5, 1907.

HEARING on an appeal by the defendants from a judgment of the Supreme Court of the District of Columbia in an action of assumpsit, a jury trial having been waived. *Affirmed.*

The COURT in the opinion stated the facts as follows:

Lizzie C. Heald, executrix of Edwin Heald, her deceased husband, sued E. Southard Parker, Anson S. Taylor, William N. Freeman, Edward S. Westcott, and Alexander B. Garden, the defendants, as members, and therefore copartners, in an unincorporated joint-stock association doing business under the name of the Anacostia Building & Loan Association, to recover $600, with interest from the 1st day of January, 1903. A jury trial being waived, the case was heard by the court below, which gave judgment for the plaintiff for the full amount, with interest and costs. The defendants appealed.

On March 21, 1898, Edwin Heald paid to this association $600, and received therefor the following certificate:

No. 25.                                                              6 shares.
Stock Full Paid.

This is to certify that Edwin Heald is entitled to six shares special stock of the Anacostia Building Association, which the said association agrees to redeem in five years from date at face value, and will pay semiannually thereon 3 per cent. on July 2d and January 2d, at their office in Anacostia, D. C.

In witness whereof the said Anacostia Building Association has caused this certificate to be signed by its acting Secretary and President, this 21st day of March, 1898.

W. N. Freeman, President.

Chas. H. Alexander,
        Acting Secretary.
Shares $100 each.                                    Non-assessable.

Interest was paid until January 1, 1903. The constitution of this association provides for the issue of capital stock in successive series of 500 shares of $100 each, payable in monthly

instalments of $2 each on each share until fully paid. When these payments reached $100 on a share of capital stock, a certificate was to be issued therefor, and when the accrued annual dividends reached another $100, making the certificate worth $200, the association was to redeem the certificate by paying $200 in cash therefor. These certificates of capital stock were transferable by proper assignment on the back, but each transfer was to be entered on the register of the association. Fines for neglect of monthly payments, and remission of fines, upon terms, were provided. The Constitution dealt mainly with this capital stock. The only provision for the other class, "full-paid interest-bearing stock," was that there should be issued a series of stock to be known as full-paid interest-bearing stock. Upon the payment of $100, the company must issue a certificate of stock therefor, to bear interest at 6 per cent, payable semiannually, on the 2d of January and July of each year. "This stock shall not be entitled to any dividend in excess of the interest payable thereon, and shall be redeemed by the association in five years from date of issuance."

This voluntary, unincorporated association was organized about 1888, and in 1903 became insolvent. The plaintiff below claimed to be a creditor, and the defendants Westcott, Parker, and Taylor admitted that they were holders of shares of the capital stock. The defendant Freeman admitted that he held one share of the same stock, issued to him for services as president, and that he continued to be president until after the maturity of the obligation given to Heald. In April, 1897, Freeman received real estate in satisfaction of his stock, and in April, 1902, the defendant Garden, who long acted as treasurer of the association, also received real estate for his stock. As treasurer, Garden had paid interest on Heald's stock as late as January, 1904. The association during the first ten years of its life had paid annual dividends ranging from 6 to 12 per cent on the capital stock.

[The further material facts will be found stated in the opinion.—Reporter.]

*Mr. John Ridout* for the appellants Garden and Freeman.

*Mr. B. W. Parker* and *Mr. R. Golden Donaldson* for the appellant Parker.

*Mr. Jackson H. Ralston, Mr. F. L. Siddons,* and *Mr. W. E. Richardson* for the appellants Westcott and Taylor.

Mr. Justice McComas delivered the opinion of the Court:

It is clear that the subscribers to the "capital stock" are to be deemed partners in this association, and each one of such members became liable to the creditors of the association. *Norwood* v. *Francis,* 25 App. D. C. 471. If the plaintiff below is found to be a creditor, her right to sue such members cannot be disputed, and all of the members are liable to suit. In the present case, five only have been made defendants, but this suit is maintainable against them unless they plead in abatement the nonjoinder of their associates, which they have not done. It would not suffice, however, to set up as a defense that there are others who are liable as partners, for such a plea in abatement must contain the names of all the members, so as to give to the plaintiff a better writ. *Cabell* v. *Vaughan,* 1 Wms.' Saund. 291b, note 4; *McGreary* v. *Chandler,* 58 Me. 538; *Kingsland* v. *Braisted,* 2·Lans. 20.

The defendant Freeman, who acted as president, and the defendant Garden, who acted as treasurer, until 1902, who each managed· to redeem stock by taking real estate from this insolvent association, did not thereby cease to be members. The constitution provided that stock and dividends could be canceled by purchase of real estate, but this did not terminate the participation of the president and treasurer in this business, and the long incumbency of the principal ·offices by them shows that Freeman and Gardner must still be regarded as partners, and they were properly sued as defendants.

It is to be observed that this suit was instituted by the executrix of Edwin Heald, whose death would have terminated his

partnership in this association, if he ever had been a partner, and there is no provision in· the articles of association requiring a notice of assignment or transfer of the interest-bearing stock to be given to the association,· nor any provision whereby the person who succeeded to his interest should become a partner. This interest-bearing stock was fully paid up when issued, and it was to bear 6 per cent interest, payable semiannually, and to be redeemed in five years from the date of its issue. It was expressly provided that certificates of capital stock may be transferred by proper assignment on the back, and the transfer was to be noted by the secretary on the register of the association; and the certificate used by the association provides on its face that it was to be "transferable by indorsement hereon and surrender of this certificate." No such requirement was made respecting the interest-bearing stock, the certificate for which had on its back these words only: "For value received ――― hereby sell, assign, and transfer unto ―――――― all my interest and claim to the within certificate. Date ――. Witness this ――― day of ―――." This certificate was negotiable in like manner with a promissory note; by indorsement and delivery any assignee acquired the legal title without any notice to the association, and it remained an unconditional promise by the association to pay the sum named at a definite time, bearing interest at 6 per cent, payable semiannually. The holder of such certificate was not entitled to dividends, but to interest only. It was called stock full paid, but the certificate holder did not share in profits as such. It was in fact the association's promise to pay $600 in five years after date. It nowhere appears that the holder of a certificate of interest-bearing stock was to participate in stockholders' meetings. It was stipulated that "stockholders holding in their own right or as trustees shall be entitled to one vote on each share of stock so held, providing all dues are paid." This stipulation included holders of shares of the capital stock, and impliedly excluded holders of certificates of interest-bearing stock. There is no evidence that Edwin Heald, who died in 1899, or his executrix, ever attended a meeting of the stockholders. It is true one

witness testified that the holders of interest-bearing certificates were allowed to participate in meetings of stockholders, but he failed to say that any of such persons ever attended such meetings.

On behalf of the appellant it was urged that the constitution was amended so as to provide that 40 per cent of the entire receipts should be a sinking fund, one half thereof to be used to pay withdrawers, and the other half held as a permanent redemption fund. This provision was a substitute for a sinking-fund provision which applied only to holders of the capital stock, and the amendment did not enlarge the class. There is no evidence, however, in the record that the original or amended sinking-fund provision was at any time obeyed, or that there was a sinking fund, and at the annual meeting of the association on January 7, 1902, this amended sinking-fund provision itself was repealed. This happened more than a year before the plaintiff's claim was due and payable. If this provision had remained in force, however, we would incline to say that a claim payable out of a sinking fund when accumulated is none the less a debt because at a given time such assets may not actually be in the debtor's hands. A creditor in this position holds a demand conditioned as to the manner in which the claim is to be discharged.

After careful consideration we have determined to regard substance rather than form. The holder of this interest-bearing stock had really no interest in the profits or losses of the business of this association. The association was under no obligation to pay Heald more than it actually received from him, with interest thereon. It could not discharge its obligation to him by paying him less. In substance this was a case of borrowing money and promising to pay it. Whether we call this paper stock, note, or bond, the nature of this transaction is to be determined by the real substance and effect of the contract between the parties. It was competent for this voluntary association to borrow money, and it borrowed $600 from the plaintiff's testator; and the true relation between this association and the holder of a certificate such as we are here considering

is that of debtor and creditor. Under this contract the association owed Heald $600, with interest payable semiannually, and the principal became payable five years after the date of the obligation which the association gave him. He was termed a stockholder, and the promise to pay which was given him was designated as stock. In this case these are mere names. In substance this certificate is a promissory note; Heald at the time of entering into the contract, evidenced by this certificate, was a creditor. Nothing done or omitted by him or his executor or by this association changed his relation to it. As we have said, the only express provision giving a shareholder a right to vote conferred such right upon the holders of the capital stock. The constitution and by-laws failed to confer any voting privilege upon the holder of interest-bearing stock. The certificate is silent upon this point, and since any assignee of Heald's certificate, without any notice whatever, was entitled to all the rights accruing to Heald as the holder of this certificate, we think it was not contemplated that such holder was a stockholder entitled to vote his stock in the meetings of this association. We are convinced that the original holder or the assignee of a certificate like that of Heald is a creditor of the association, and that this interpretation only will carry into effect the intent and purpose of both parties in making this contract.

This contract must be interpreted as an agreement upon the part of the defendant to pay to the plaintiff and his assignee the amount of $100 upon each of the six shares represented by the certificate in suit, at the expiration of five years from its date, with 6 per cent interest thereon, payable semiannually. It is not necessary for us to discuss the cases relied on by the appellants, which deal with the status of the holder of paid-up shares in building associations. Those are cases of corporations and of building and loan associations under the familiar statutes creating such bodies corporate. In many of the cases cited, the certificates were transferable only on the books of the company, as were the shares of the capital stock of the unincorporated association we are here considering. We have examined

those cases, but they are not persuasive. We do recognize, however, that some decisions appear to take a view different from our own, and in cases not wholly controlled by local statutes or the charter or by-laws of the incorporated associations. We concur in the reasoning of the courts in *Cook* v. *Equitable Bldg. & L. Asso.* 104 Ga. 828, 30 S. E. 911; *Cashen* v. *Southern Mut. Bldg. & L. Asso.* 114 Ga. 990, 41 S. E. 51; *Vought* v. *Eastern Bldg. & L. Asso.* 172 N. Y. 516, 92 Am. St. Rep. 761, 65 N. E. 496.

The considerations which lead those courts to hold lenders like Heald to be creditors apply to the circumstances of this case, where Heald loaned the money to a voluntary association, and received such a certificate as we have discussed. The learned court below committed no error in holding that the plaintiff below was a creditor; that these defendants were liable as partners in a voluntary association; that, in the absence of the plea in abatement, this suit against these defendants should proceed to judgment that the president and treasurer had not, by the transactions we have mentioned, escaped from their liability as partners; and that the plaintiff was entitled to judgment for the principal sum, with the unpaid interest thereon down. This judgment must be *affirmed,* with costs. It is so ordered.