## MISSOURI PAC. RY. CO. v. SIDELL.

(Circuit Court of Appeals, Second Circuit. April 16, 1895.)

No. 120.

**1. CORPORATIONS—CONTRACTS OF OFFICERS—RATIFICATION.**

A contract, made with the president of a railway company, who has general charge of its entire system, and whose acts the company is accustomed to ratify in all cases, binds the corporation. Following Railroad Co. v. Sidell, 66 Fed. 27.

**2. SAME—CONTRACTS—ULTRA VIRES—KANSAS STATUTE.**

The statutes of Kansas, as amended in 1887 (Act March 4, 1887, c. 186), provide that: "Any railroad company * * * may aid any railroad company of this state in the construction of its road and branches by purchase of its stock and bonds * * * or otherwise. Such purchase * * * may be made * * * or aid furnished upon such terms and conditions as shall be agreed upon by the directors, * * * but the same shall be approved or ratified by the persons holding or representing two-thirds in amount of the capital stock of each of such companies, at a * * * meeting * * * or by the approval in writing of two-thirds: * * * Provided that no purchase, lease or guaranty * * * shall be entered into, unless the line of railroad * * * shall, when constructed, form a continuous line with the road of the company purchasing * * * either by direct connection therewith or through an intermediate line or lines * * * which such company shall have the right * * * to use or operate * * * or a majority of whose stock it has purchased." Held, that a contract made by the M. Ry. Co., while this statute was in force, to pay for the construction of an extension of the road of the I. Ry. Co., a Kansas corporation, owning a line of railroad which was connected with the line of the M. Ry. Co. by two intermediate roads, one of which was leased by the M. Ry. Co., and all the stock of the other of which was owned by that company, was not ultra vires.

**3. SAME—RATIFICATION.**

It appeared that such a contract had been made by the M. Ry. Co., and fully executed by the contractor, the M. Ry. Co. receiving the benefit thereof. There was no formal approval of the contract by the stockholders of the M. Ry. Co. at a meeting or in writing, but the work was all done under the supervision of the engineers of the M. Ry. Co., its progress was reported in the annual reports of that company, the greater part of the cost was paid by that company, and the fact stated in the annual reports, and all the bonds and stock issued by the I. Ry. Co. on account of the extension were turned over to the M. Ry. Co. Held, that the M. Ry. Co. could not escape liability on the contract because of its failure to comply with the requirements as to approval by the stockholders.

In Error to the Circuit Court of the United States for the Southern District of New York.

This was an action by Cornelius V. Sidell against the Missouri Pacific Railway Company and the Interstate Railroad Company to recover a balance due upon a contract. Judgment was entered in the circuit court for the plaintiff, pursuant to a verdict directed by the court. Defendant the Missouri Pacific Railway Company brings error.

Rush Taggart, for plaintiff in error.
Albert Stickney, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. This action was brought by Cornelius V. Sidell, as assignee of Simmons & Sidell and of the Occidental Construction Company, to recover a balance due under a contract with the Missouri Pacific Railway Company for work done and materials furnished in building an extension of the Interstate Railroad from the westerly line of Coffey county, in the state of Kansas, to the town of Madison, in Greenwood county, in said state, a distance of 10.87 miles, at an agreed price. The complaint also includes a claim for extra work, and the answer of the Missouri Pacific Railway Company, while denying the making of such contract, or any liability thereunder, sets up a counterclaim. There is no question raised as to the amount of the judgment if plaintiff be entitled to recover at all. The contract was made with Jay Gould, the president of the Missouri Pacific, and it was insisted upon the trial that the proof failed to show a contract with the defendant railway company. That point was reserved by exceptions and assignment of errors, but before this case came on for argument the opinion of this court in Railroad Co. v. Sidell, 66 Fed. 27, was filed. The evidence in that case touching authority of the president and ratification of his acts was substantially the same as in the case at bar, and counsel for plaintiff in error has therefore not argued this assignment of error. It need not be further discussed.

There is, therefore, but a single question left in the case. The contract was entered into July 13, 1887. By its terms the contractors were to build the 10 miles as an extension of the Interstate Railroad owned by the Interstate Railroad Company, a Kansas corporation, whose stock was held by the Missouri Pacific, which agreed, through its president, to pay the contractors for building such extension. The defendant insists that "such a contract was wholly ultra vires as to the Missouri Pacific Railway; that under the laws of the state of Kansas, under which the Missouri Pacific Railway Company was incorporated, and within which state the extension was built, it did not have the power to enter into a contract for the construction of a road belonging to the Interstate Railroad Company, and that such contract, under the authorities, was null and void." The trial judge took this view of the case, and the verdict was rendered on the theory that a corporation which receives the benefit of a full performance of a contract not contrary to its charter or the statute cannot deny that it was within its power to make such contract to the prejudice of the party who has performed the contract. We are satisfied, however, that under the extremely broad language of the statute of Kansas such a contract was not ultra vires. Authority was given to railroads to make contracts for the purchase or lease of other roads by chapter 92, § 2, Laws 1870. Such grant of power being evidently not broad enough, the legislature of Kansas, in 1886, amended the section so as to read as set forth below. And the very next year it still fur-

ther enlarged the powers of railroad companies to aid other railroads, as will be seen in the quotation from chapter 186 of the Laws of 1887, passed March 4th of that year, and also set forth below in parallel column.

Act of 1870, as Amended by Act of February 18, 1886 (chapter 134).

Sec. 2. Any railroad company of this state may sell or lease its road &c. &c., and any railroad company in this state existing under general or special laws, may buy or lease the road, with all the rights, privileges and franchises thereto pertaining or buy the stock and bonds or guarantee the bonds of any railroad company incorporated and organized within or without this state whenever the roads of such companies shall form in the operation thereof a continuous line or lines &c., &c.

Act of 1870, as further Amended by Act of March 4, 1887 (chapter 186).

Sec. 2. Any railroad company of this state may sell or lease the whole or any part of its railroad branches &c. &c., * * *; and any railroad company organized under the laws of this state, or any state or territory of the United States may aid any railroad company of this state in the construction of its road and branches by purchase of its stock and bonds, or any portion thereof, or by guaranteeing its bonds, or the interest thereon, or otherwise. Such purchase, sale or lease may be made or guaranty entered into, or aid furnished, upon such terms and conditions as shall be agreed upon by the directors of the respective companies; but the same shall be approved or ratified by persons holding or representing two-thirds in amount of the capital stock of each of such companies respectively, at an annual stockholders' meeting, or at a special meeting of the stockholders called for that purpose, or by the approval in writing of two-thirds in interest of the stockholders of each company respectively. Provided, however, that no purchase, lease or guaranty under this act shall be entered into unless the line of railroad so purchased or leased, or whose stock or bonds are purchased, or the bonds of which are guaranteed, shall when constructed form a continuous line with the road of the company purchasing, leasing or guaranteeing, either by direct connection therewith, or through an intermediate line or lines constructed or to be constructed, which such company shall have the right by contract or otherwise when completed to use or operate or the principal or interest of whose bonds it has guaranteed, or a majority of whose stocks it has purchased, [here follow other provisos which are immaterial.]

These amendments are most suggestive. If it were desired to secure legislative authority for the making of such a contract as the one at bar, it is difficult to see how the proposer of the amendment could have better expressed himself than by adding to the enumeration of powers already conferred, to buy, to lease, to buy the stock, to buy the bonds, and to guaranty the bonds, the further power to "otherwise aid." The words are broad enough to cover a loan of money made directly to the aided company, or an agreement to pay for the extensions or betterments added to its road. Nor is such construction obnoxious to any objection that such a grant of power is not appropriate to the original purposes for which the aiding road was chartered. The qualification limiting the power to otherwise aid (and it may fairly be construed as limiting that power as well as the power to guaranty) to cases where the aided road connects

with the other, and may thus be available as a feeder to increase the business of the latter over its own lines, does away with any such objection. No Kansas authority construing this statute has been called to the attention of this court; the one cited on the argument (Railroad Co. v. Davis, 34 Kan. 199, 8 Pac. 146) having been decided before the amendment. The evidence shows a continuous line within the terms of the qualification. From Sedalia, a station on a line owned by the Missouri Pacific, to Monteith Junction, there runs the Missouri, Kansas & Texas Railway, which, when this contract was made, was operated under a lease to the Missouri Pacific. From Monteith Junction to the eastern extremity of the Interstate Railroad there runs the St. Louis & Emporia Railroad, which in 1887 was operated by the Missouri Pacific; not under a lease, but apparently because of ownership of its stock. It is included in the annual report of the Missouri Pacific as part of the new lines constructed in 1886, and the vice president of the latter road testified that lines thus stated to be part of the Missouri Pacific system were either under lease, or their stock owned by the company, or were built under a contract which would turn the road over when complete to the hands of the Missouri Pacific, although it was built for some other company. The evidence seems sufficient to sustain a finding that the St. Louis & Emporia was, within the language of the statute, "an intermediate line," which the company giving the "aid" (the Missouri Pacific) had "the right by contract or otherwise, when completed, to use or operate." But if it be conceded that the proof is not sufficiently positive to bring it within that category, and there was some conflict of evidence as to how it was operated, there can be no doubt upon the proof that it was an intermediate line, a majority of whose stock was owned by the Missouri Pacific. The treasurer testifies that the Missouri Pacific owned stock of the St. Louis & Emporia. How many shares, he does not state; but he does testify that the latter road was merged with the Interstate Railroad Company into a new corporation, the Interstate Railway Company, the result being that all the shares of the Interstate Railway Company—fourteen thousand and odd—passed to the Missouri Pacific, manifestly in exchange for its holdings in the old companies. As to the shares of the Interstate Railroad Company, which received the "aid," he testified at first that he did not remember how many of them belonged to the Missouri Pacific (they stood in his name as trustee for that company), but afterwards admitted on cross-examination that the Missouri Pacific held them all. In the absence of any decision in the state courts of Kansas construing the act of 1887 otherwise than in accordance with its plainly expressed terms, it must be held to authorize a railroad company, situated as was the Missouri Pacific, to aid a Kansas railroad company by paying in the first instance for its extension, and taking bonds and stock in repayment of its advances, when the road thus aided connects with the road which gives the aid, either directly or through intermediate line or lines, as set forth in the statute. And if the Missouri Pacific had such authority, the contract it entered into with the plaintiff's assignor was not ultra vires.

It only remains to determine whether the plaintiff is to be debarred from recovery because it is not shown affirmatively that his contract with the Missouri Pacific to build an extension of the Interstate Railroad was ratified by "persons holding or representing two-thirds in amount of the capital stock of each of such companies, respectively, at an annual stockholders' meeting, or at a special meeting of the stockholders called for that purpose," or was "approved in writing by two-thirds in interest of the stockholders of each company respectively." All the work called for by the contract was performed under the direction of the engineer of the Missouri Pacific, who certified from time to time to the proper performance of the work. Upon such certificates the Missouri Pacific paid all of the stipulated price of over $90,000 except about $15,000, and the items of extra work. The annual reports of that road to the stockholders for 1887 and 1888 refer to this extension as one of the items of new construction of branch lines, describing such branch lines as forming "important connections with the main arteries, which, with favorable conditions, should thereafter yield satisfactory revenues from local business and increased traffic for the main lines." The annual report of 1888 states that the cost of such new construction was paid by the Missouri Pacific. The annual report of 1893 states that it is still the owner of the Interstate Railway from Monteith Junction to Madison, including this extension. From the time of completion of the extension it has been operated as a part of the Missouri Pacific system. The treasurer testified on cross-examination that all the bonds and stocks issued by the Interstate Railroad Company against this 10-mile extension were turned over to the Missouri Pacific Company; that no one except that company ever had any control over the construction or alteration of the extension, or had control of its operations, or ever got a cent of income out of it, although it operated such extension through the officers of the Interstate Railroad Company and its successors; that "from the very beginning, through these successive corporations, the Missouri Pacific owned all the stock and bonds, and has been entitled to all the income." The Missouri Pacific has received the full benefit of the contract, for the completion of that contract has extended the road of a Kansas railroad company, which road, being completed, formed a continuous line in connection with its own, available for its uses through the control which its ownership of stock assured to it. Whether or not it held the legal title to the completed structure is immaterial. The plaintiff had turned over his materials and the results of his labor to the road which the Missouri Pacific was authorized to aid, and, having promised to pay when they were thus turned over, the obligation to pay arises.

This brings the case within the principle of law approved by the supreme court in Hitchcock v. Galveston, 96 U. S. 351, that—

"Although there may be a defect of power in a corporation to make a contract, yet, if a contract made by it is not in violation of its charter, or of any statute prohibiting it, and the corporation has by its promise induced a party relying on the promise and in execution of the contract to expend money and

perform his part thereof, the corporation is liable on the contract. * * * Having received the benefit at the expense of the other contracting party, it cannot object that it was not empowered to perform what it promised in return, in the mode in which it promised to perform."

See, also, Arms Co. v. Barlow, 63 N. Y. 70; Railway Co. v. McCarthy, 96 U. S. 267.    And, as to inference of ratification, when the corporation has received the benefit of a contract made by its agents for a purpose authorized by its charter, Bank v. Patterson's Adm'rs, 7 Cranch, 299; Pennsylvania R. Co. v. Keokuk & H. Bridge Co., 131 U. S. 371, 9 Sup. Ct. 770.

There is no force in the suggestion that the remedy of plaintiff is not upon the contract, but, if at all, upon a quantum meruit; nor do the cases cited in support of that proposition apply here.    Davis v. Railroad Co., 131 Mass. 275; Pennsylvania R. Co. v. Keokuk & H. Bridge Co., 131 U. S. 389, 9 Sup. Ct. 770; Louisiana v. Wood, 102 U. S. 294; Parkersburg v. Brown, 106 U. S. 487, 1 Sup. Ct. 442; Pennsylvania R. Co. v. St. Louis, A. & T. H. R. Co., 118 U. S. 316, 6 Sup. Ct. 1094.    In all of them there was a total want of power, not a mere failure to comply with prescribed requirements or conditions; and, as was said in Davis v. Railroad Co., supra:

"There is a clear distinction * * * between the exercise by a corporation of a power not conferred upon it, varying from the objects of its creation as declared in the law of its organization, of which all persons dealing with it are bound to take notice, and the abuse of a general power, or the failure to comply with prescribed formalities or regulations in a particular instance, when such abuse or failure is not known to the other contracting party."

In the case at bar, power to make contracts in aid of other roads had been conferred by statute upon the defendant; but in making the contract sued upon, which was within the range of its authority, it failed to comply with a requirement as to ratification, which it should not have neglected, but which it chose to disregard.    Zabriskie v. Railroad Co., 23 How. 398.    The judgment of the circuit court is affirmed.