Nellie A. G. Vought, Appellant, *v.* Eastern Building and Loan Association of Syracuse, Respondent.

1. Building and Loan Associations — When Shareholder May Recover Amount Named in Certificate of Stock. Where a certificate of stock, issued by a building and loan association to a member thereof, provides that in consideration of a membership fee, the agreements and statements contained in his application for membership and full compliance with the terms, conditions and by-laws printed on the front and back of the certificate, the association would pay him, or his legal representatives, the sum of $100 for each of the shares held by him at the end of seventy-eight months from the date of the certificate, the amount of the monthly installments to be paid upon each share and the actual date of the maturity of the certificate being fixed by an indorsement upon the back thereof, the holder of the certificate is entitled upon the maturity thereof, the required installments having been paid, to the maturity or par value of each share of stock held by him under such certificate.

2. Same — Terms and Conditions of Contract not Inconsistent with Absolute Promise to Pay Amount Named in Certificate. Provisions in the terms, conditions, by-laws and articles of association printed upon the front and back of the certificate and made a part of the contract which provide that a shareholder should pay seventy-five cents a month on each share until the share *matures or is withdrawn;* that all shareholders should pay a monthly installment of seventy-five cents a share until the same shall be *fully paid;* that the amount to be paid to the owner of the shares at maturity shall be $100 per share; that at stated periods the profits arising from interest, premiums, fines and other sources should be apportioned among the shares in good standing, and that no money should be drawn from the loan fund for any other purpose than the making of loans on security and to pay amounts due withdrawing shareholders, are not so inconsistent with the promise to pay the amount named in the certificate as to show an intention that such payment should

be made only in the event that, upon the shares held under such certificate, there has been paid a sum which, together with the profits apportioned thereto, would amount to its face value.

3. SAME — TERM "WITHDRAWING SHAREHOLDERS" DEFINED. The provision contained among those referred to and made a part of the contract, that no money may be drawn from the loan fund for any other purpose except making loans on security and to pay amounts due withdrawing shareholders, does not preclude the payment of the amount called for by the certificate, since the term "withdrawing shareholder" in that connection means not only shareholders who may withdraw before the maturity of their certificates, but also those who shall withdraw at that time or afterwards.

4. EVIDENCE — WHEN APPLICATION FOR MEMBERSHIP NOT A NECESSARY PART OF PLAINTIFF'S PROOF IN ACTION TO RECOVER UPON CERTIFICATE. In an action brought by a certificate holder against the association to recover the amount of the certificate, the failure of the plaintiff to introduce in evidence his application for membership in the association will not prevent a recovery, where it was not made a part of the contract, but preceded it, and was only mentioned as part of the consideration therefor, and, when the defendant makes no claim that it constituted a defense, the omission to introduce it cannot be regarded as a defect in proof.

5. ULTRA VIRES NOT AVAILABLE AS DEFENSE WHEN CERTIFICATE HOLDER HAS COMPLIED WITH CONTRACT IN GOOD FAITH. A defense in such an action, that the defendant was unauthorized by the statute under which it was organized to make such a contract, assuming that it was *ultra vires*, as to which no opinion is expressed, is not available where the contract has been in good faith fully performed by the plaintiff and the defendant has had the benefit of such performance and of the contract.

*Vought* v. *Eastern Building & Loan Assn.*, 61 App. Div. 613, reversed.

(Argued November 24, 1902; decided December 2, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 9, 1901, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles S. Kent* for appellant. The plaintiff made out a cause of action, and, upon the evidence, was entitled to judg-

. ment. (*Matter of E. R. F. L. Assn.*, 131 N. Y. 370; *Plank Road Co.* v. *Payne*, 17 Barb. 580; *Barreda* v. *Silsbee*, 21 How. [U. S.] 146; *Williams* v. *Parker*, 136 Mass. 204; *N. Y. & N. H. Ry. Co.* v. *Schuyler*, 30 N. Y. 52.) The court erred in assuming that the questions of maturity, mutuality and *ultra vires* were questions of law. (*F. L. & T. Co.* v. *Curtis*, 7 N. Y. 466; *C. C. Bank* v. *Risley*, 19 N. Y. 369; *De Groff* v. *Thread Co.*, 21 N. Y. 124; *Howard* v. *Boorman*, 17 Wis. 459; *N. Y. F. O. Co.* v. *N. J. O. Co.*, 3 Duer, 648; *S. B. Co.* v. *Redsdale*, 36 N. J. L. 229; *Nelson* v. *Eaton*, 26 N. Y. 415; *Bank of U. S.* v. *Dandridge*, 12 Wheat. 79; *Kent* v. *Q. S. M. Co.*, 78 N. Y. 183; *Bennett* v. *Clough*, 1 B. & A. 461.) Plaintiff became a creditor of defendant at the end of seventy-eight months. (*Williams* v. *Parker*, 136 Mass. 204; *U. S. B. & L. Assn.* v. *Silverman*, 85 Penn. St. 97; *Christian's Appeal*, 102 Penn. St. 189; *Kunston* v. *N. B. & L. Assn.*, 67 Me. 201; *Kadish* v. *G. C. E. L. & B. Assn.*, 151 Ill. App. 531; *Everman* v. *Schmidt*, 53 Ohio St. 174; *House* v. *Eastern*, 52 App. Div. 163; *Allen* v. *Herrick*, 15 Gray, 284; *A. T. Works* v. *Boston*, 139 Mass. 9.) The promise to pay is not *ultra vires.* (*Nelson* v. *Eaton*, 26 N. Y. 215.) The promise to pay was absolute and within the terms of the statute. There are no exceptions in the statute enabling avoidance of a promise. (*Head* v. *Co.*, 2 Cranch, 167; *Rhodes* v. *Assn.*, 82 Penn. St. 183; *Heck* v. *McEwen*, 12 Lea, 97; *Lovett* v. *Assn.*, 6 Paige, 56; *President, etc.,* v. *Ry. Co.*, 7 Lans. 245; *Whitney* v. *U. T. Co.*, 65 N. Y. 577; *Buffalo* v. *Cary*, 26 N. Y. 80; *People* v. *Preston*, 140 N. Y. 552; *Bank of Pennsylvania* v. *Comm.*, 19 Penn. St. 152; *A. T. Works* v. *Boston*, 139 Mass. 9.) The contract to pay at a definite time could be made by the defendant under the statute. There is no express engagement of plaintiff to pay installments after the seventy-eight months. (Angell & Ames on Corp. 493; *C. R. Bridge* v. *Warren*, 11 Pet. 420; *A. T. Co.* v. *Boston*, 139 Mass. 9; *Williams* v. *Parker*, 136 Mass. 204; *Avery* v. *Herrick*, 15 Gray, 280; *Bank* v. *Earll*, 13 Pet. 595; *Matter of E. R. F. L. Assn.*,

131 N. Y. 369; *Kadish* v. *Assn.*, 151 Ill. 537; *Ward* v. *Johnson*, 95 Ill. 240; *Ry. Co.* v. *McCarthy*, 96 U. S. 267; *San Antonio* v. *Chaffee*, 96 U. S. 315.)

*Daniel A. Pierce* for respondent. The plaintiff failed to make out a *prima facie* case. (Thompson on Building Assns. [2d ed.], §§ 3, 4; *Silver* v. *Barnes*, 6 Bing. [N. C.] 180; *Robertson* v. *H. Assn.*, 10 Md. 397; *Tilley* v. *A. B. & L. Assn.*, 52 Fed. Rep. 618; *Nat. S. & L. Bank* v. *M. Nat. Bank*, 89 N. Y. 467, 469; *Jemison* v. *C. S. Bank*, 122 N. Y. 135; *People ex rel.* v. *Campbell*, 144 N. Y. 166, 172; Endlich on Building Assns. [2d ed.] §§ 42, 218; Thompson on Building Assns. [1st ed.] 15; Cook on Stockholders [3d ed.], § 492; *Gibbs* v. *L. I. Park*, 83 Hun, 92; *Matters of Comrs. of Washington Park*, 52 N. Y. 131; *Engelhardt* v. *F. W. Assn.*, 148 N. Y. 281; *Burr* v. *Wilcox*, 22 N. Y. 551.) The appellant failed to prove her contract. (*Matter of Washington Park*, 52 N. Y. 131; *Seward* v. *Huntington*, 94 N. Y. 104.) None of the appellant's exceptions are well founded. (*Kennedy* v. *Porter*, 109 N. Y. 526; *A. F. Ins. Co.* v. *Austin*, 69 N. Y. 470; *Dwight* v. *G. Ins. Co.*, 103 N. Y. 341; *Brady* v. *Cassidy* 104 N. Y. 147.)

Martin, J. This action was to recover one thousand dollars, the par or maturity value of ten shares of stock issued by the defendant, five shares to the plaintiff and five shares that were assigned to her which were originally issued to one H. E. Newton. The contract or certificates of shares made and issued by the defendant to the plaintiff and her assignor constituted them shareholders, and provided that in consideration of the membership fee of one dollar upon each share, together with the agreements and statements contained in the application for membership in the association, and full compliance with the terms, conditions and by-laws printed on the front and back of each certificate, the defendant would pay to such shareholder, or his or her executors, administrators, or assigns, the sum of one hundred dollars for each of said shares at the end of seventy-eight months from the date thereof.

Indorsed upon each of these certificates was the name of the shareholder, his residence, and a statement that the monthly installments were three dollars and seventy-five cents. Indorsed upon the certificate issued to the plaintiff was, "Date of issue Dec. 1st, 1891. Maturity, June 1st, 1898," while upon the certificate originally issued to Newton and transferred to the plaintiff was indorsed, "Date of issue Oct. 1, 1890. Maturity, April 1, 1897." The terms and conditions referred to provided, in considerable detail, for the withdrawal of shares by a shareholder before the period of maturity, the time and method of such withdrawal, and the terms upon which it might be made.

As the defendant is a going association, and the questions here presented do not arise upon its insolvency or dissolution, it is perhaps doubtful if the articles of association are to be regarded as a part of the contract between the parties. Yet, in the consideration of this case, we shall treat them as material in determining the character and effect of the agreement and the rights of the parties under it. The certificates issued provide that the terms, conditions and by-laws printed on the front and back thereof are made a part of the contract, and, hence, taken together, they constitute the agreement between the parties and the standard by which their rights and liabilities are to be determined. (*People ex rel. Atty.-Gen.* v. *Life & R. Assn.*, 150 N. Y. 94, 108; *Matter of Equitable R. F. L. Assn.*, 131 N. Y. 354, 369.)

At the threshold of this investigation we find an absolute and unqualified promise upon the part of the defendant to pay to each of the holders of the stock owned by the plaintiff the sum of one hundred dollars for each share at the end of seventy-eight months from the date of the certificate, and also an indorsement thereon of the actual time when the shares were to mature. Therefore, as that time had expired and the required payments had been made, it is manifest that the plaintiff was entitled to recover, unless there is some other part of the contract which modifies or changes that provision.

It is contended by the respondent that such a change is

wrought by the other provisions contained in the terms, conditions, by-laws and articles of association, and that this agreement to pay at the expiration of seventy-eight months must, in the light of such provisions, be read and construed as an estimated, and not an actual, time of payment. Its contention is that the provisions of paragraph one of the terms and conditions printed upon the certificate, which provide that the shareholder shall pay seventy-five cents a month on each share until the share *matures or is withdrawn;* section 14 of article 14 of the by-laws, stating that all shareholders shall pay a monthly installment of seventy-five cents on each share, until the same shall be *fully paid;* the fifteenth paragraph of the articles of association, which declares that the amount to be paid to the owners of shares at maturity shall be one hundred dollars per share; the sixth paragraph of the terms and conditions, which provides that at stated periods the profits arising from interest, premiums, fines and other sources shall be apportioned among the shares in good standing, and article eleven of the by-laws, which declares that no money can be drawn from the loan fund for any other purpose than the making of loans on security and to pay amounts due withdrawing shareholders, when given their obvious meaning, effect an utter alteration of the provision by which the defendant agreed to pay the plaintiff one hundred dollars upon each share at the expiration of the term actually designated. If such change or modification is wrought it can only be upon the ground that the provisions of the contract relied upon by the defendant are inconsistent with its promise to pay at the time named and clearly show that the intention of the parties was that such payment should be made only in the event that upon the shares owned by the plaintiff there had been paid a sum which, together with the profits apportioned to them, would amount to the face of the shares. In other words, the defendant's contention is that those provisions were sufficient to change an absolute promise to pay into a conditional one dependent upon the success of its enterprise. We find nothing in these provisions which would

33

justify any such conclusion. The provision in paragraph one that the plaintiff should pay until the share is paid or withdrawn, is entirely consistent with the agreement for absolute payment for the shares by the defendant at the time named, as by its contract it agreed that the plaintiff's shares should mature at that time. The provision of section 14, article 14, of the by-laws obviously refers to the agreement in the certificate by which such payments were to be continued for seventy-eight months, and when payments had been made for that period clearly the shares became fully paid. The same may be said as to the fifteenth paragraph of the articles of association, which declares that the amount to be paid to the owners of the shares at maturity shall be one hundred dollars per share. Where shares are to be paid for by paying the sum of seventy-five cents monthly upon each for the period of seventy-eight months, and such payments have been made, it is extremely difficult to discover any theory upon which it can be properly held that such shares have not been fully paid and matured. Nor do we see how the provision for apportioning profits among the shares in any way relieved the defendant from or modified its promise to pay at the time named.

But it is further contended by the respondent that inasmuch as it is provided by article eleven of the by-laws that no money can be drawn from the loan fund for any other purpose except making loans on security and to pay amounts due withdrawing shareholders, the defendant had no authority to pay this claim because the loan fund was the only one from which such payments could be made. If that be true, and the plaintiff is not to be regarded as a withdrawing shareholder, we are unable to see how it could pay the plaintiff's claim even if she had already paid more than the face thereof, as all the receipts of the association are divided into two classes, the loan fund and the expense fund. The latter is dedicated to, and employed in, paying the current expenses of the association, and the loan fund contains all the money received which does not go into the expense fund as therein provided. Hence, there never could be any fund from which such certificates could be paid, if

the contention of the respondent is correct. We think it is not. We are of the opinion that the term "withdrawing shareholders" in that connection means not only shareholders who may withdraw before the maturity of their certificates, but also those who shall withdraw at that time or afterwards. Any other construction would result only in absurdity, and any interpretation which would produce such a result should, if possible, be avoided. Moreover, if the provisions relied upon to modify or change the absolute promise of the defendant to pay at the expiration of seventy-eight months, are at all inconsistent with that provision, still the promise ought not to be changed or modified by any provision of the contract which is less definite and certain than the promise itself. As the contract was prepared by the defendant, if there is any uncertainty or ambiguity as to its meaning, it should be resolved in favor of the plaintiff. The defendant is responsible for it, as the language is wholly its own. (*Gillet* v. *Bank of America*, 160 N. Y. 549, 554.)

It is also pertinent to inquire what object the plaintiff or her assignor could possibly have had in purchasing stock, if she or he was to pay the full amount in cash, and then at the end of eleven years receive without interest only the principal which had been thus paid. Obviously the inducement to make such purchase was that the plaintiff and her assignor were to obtain a profit by thus investing their money, as one of the avowed objects of the association was to afford its members a safe and profitable investment of their savings. When we look at the terms, conditions, by-laws and articles of association we find, among other things, that a withdrawing member is to receive six per cent upon his investment after six months and up to two years, the third year seven per cent, and after that until maturity eight per cent, and that the association may also mature any certificate after one year and issue a paid-up certificate payable at maturity, with interest at six per cent. It may also cancel any unpledged certificate, by lot, upon the payment to the owner of the amount of the installments paid thereon, together with eight

per cent per annum as added dividend. Again, it may issue paid-up stock at the price of fifty dollars per share, payable on the date of issue, in which case, after the expiration of the time when it is to mature, the party will receive the sum of one hundred dollars. Thus, if the defendant's contention is correct, the member who withdraws before the maturity of his certificate, or whose certificate is matured by the defendant or canceled by it, or the member who purchases paid-up stock, will receive for the amount paid a much greater proportion than the shareholder who continues to the end and pays the full amount required by his certificate. These and other provisions of the contract show quite conclusively that it was not the intent of the agreement that the purchaser of shares, who paid for them in full, should receive only the amount paid by him, without interest, but that its purpose was that the investment should be a profitable one, and in furtherance of that purpose it was that this contract was made. This, like other contracts, should be so interpreted as to carry into effect the intent and purpose of the parties in making it. Can any one suppose for a moment that the plaintiff or her assignor, when she or he purchased this stock, with an agreement that it should mature at the end of seventy-eight months, even suspected that such maturity was to depend upon other conditions or circumstances than the expiration of the time? Obviously not. This contract must be interpreted as an agreement upon the part of the defendant to pay to the plaintiff and her assignor the amount of one hundred dollars upon each of the shares represented by the two certificates in suit at the expiration of seventy-eight months from their date and at the time indorsed upon the back thereof.

It was admitted by the pleadings, if not upon the trial, that prior to the commencement of the action the plaintiff made her proof of claim against the defendant, as required by the terms of the certificates, and that the same was rejected by it. Therefore, the plaintiff was entitled to recover the amount of the certificates in suit.

The contention of the respondent that the plaintiff should

not recover for the reason that the application was not intro-
duced in evidence, cannot be upheld.   While the certificate
recites that "in consideration of the membership fee, together
with agreements and statements contained in the application
for membership in the Association, and full compliance with
the Terms, Conditions and By-laws printed on the front and
back of this certificate, which are hereby referred to and made
a part of this contract," it promised to pay as therein pro-
vided, still it is obvious that the application for membership
was not in fact made a part of the contract, but preceded it
and was only mentioned as a part of the consideration there-
for.   If there was in the application any statement or repre-
sentation which might have formed a basis of defense, it
should have been pleaded and proved by the defendant, and
as there was no claim that the application constituted a defense
the omission of the plaintiff to introduce it in evidence cannot
be regarded as a defect of proof upon her part.

The only remaining question we deem it necessary to con-
sider arises upon the contention of the defendant that it was
unauthorized by the statute under which it was organized to
make the contract in suit, and, hence, the plaintiff cannot
recover.   The defendant was organized under the provisions
of chapter 122 of the Laws of 1851 and the statutes amenda-
tory thereof and supplemental thereto.   We deem it unneces-
sary at this time to determine whether the defendant was
authorized by that statute to enter into such contracts, for if
we assume that the making of them was in excess of the
express power conferred upon the corporation by that statute,
still, as the contracts involved no moral turpitude and did not
offend any express statute, they were not illegal in a sense that
would prevent the maintenance of an action thereon.   It is
now well settled that a corporation cannot avail itself of the
defense of *ultra vires* when the contract has been, in good
faith, fully performed by the other party, and the corporation
has had the benefit of the performance and of the contract.
As has been said, corporations, like natural persons, have
power and capacity to do wrong.   They may, in their con-

tracts and dealings, break over the restraints imposed upon them by their charters; and when they do so their exemption from liability cannot be claimed on the mere ground that they have no attributes nor facilities which render it ·possible for. them thus to act. While they have no right to violate their charters, yet they have capacity to do so, and are bound by their acts where a repudiation of them would result in manifest wrong to innocent parties, and especially where the offender alleges its own wrong to avoid a just responsibility. It may be that while a contract remains unexecuted upon both sides, a corporation is not estopped to say in its defense that it had not the power to make the contract sought to be enforced, yet when it becomes executed by the other party, it is estopped from asserting its own wrong and cannot be excused from payment upon the plea that the contract was beyond its power. (*Bissell* v. *Mich. So. & No. Ind. R. R. Cos.,* 22 N. Y. 258; *Whitney Arms Co.* v. *Barlow,* 63 N. Y. 62; *Rider Life Raft Co.* v. *Roach,* 97 N. Y. 378; *Holmes, Booth & Haydens* v. *Willard,* 125 N. Y. 75, 80; *City of Buffalo* v. *Balcom,* 134 N. Y. 532; *Bath Gas L. Co.* v. *Claffy,* 151 N. Y. 24; *Moss* v. *Cohen,* 158 N. Y. 240, 249; *Hannon* v. *Siegel-Cooper Co.,* 167 N. Y. 244.)

Our attention has been called to several cases in the Supreme Court where a doctrine adverse to this decision has been held, but after a full consideration of those decisions, we have reached the conclusion that they should not be followed.

It is contended that if the construction we have given this contract is to prevail, it will affect the responsibility of the defendant, if it does not result in its bankruptcy. If that be true, yet it affords no proper reason why we should disregard the plain and unqualified terms and provisions of the contract. Nor does it furnish any excuse for us to disregard well-established principles of law to hold it unenforceable. If it be true that the defendant cannot successfully continue its business upon the plan it has established without disregarding its contracts, or without making false or unauthorized promises to its stockholders to induce the unwary to pay their money

to it upon contracts it does not intend to or cannot perform, no unmitigated calamity will be liable to befall the community in which its business is transacted by its suspension or by a final dissolution of the association. It is better that it should fail than that it should continue to hold out false hopes to investors who may not only be deprived of their promised profits, but may ultimately lose the principal as well.

By these considerations we are led to the conclusion that the certificates upon which this action was brought had matured when it was commenced; that there was due the plaintiff thereon the sum of one thousand dollars and interest after sixty days from the presentation and rejection of the claims made under them; that the trial court improperly non-suited the plaintiff, and that the judgments of the courts below should be reversed.

The judgments of the Trial Term and of the Appellate Division should be reversed and a new trial granted, with costs to abide the event.

PARKER, Ch. J., GRAY, O'BRIEN, VANN, CULLEN and WERNER, JJ., concur.

Judgments reversed, etc.