## In re WATERLOO ORGAN CO.

(Circuit Court of Appeals, Second Circuit. December 20, 1904.)

No. 72.

1. CORPORATIONS—BANKRUPTCY—BONDS—ISSUANCE—ULTRA VIRES.

The president of a corporation, in redemption of his promise to a stockholder to purchase his stock on his becoming dissatisfied therewith, gave such stockholder his personal note for the price of the stock. The stockholder thereupon indorsed the note to the secretary of the corporation, who delivered to him therefor an order on the corporation's trustee for two of its bonds. The note was never collected by the corporation, nor entered among its bills receivable; and the bonds so issued were not entered as a part of the corporation's bonded indebtedness until over three years thereafter, when the amount was charged to profit and loss. *Held,* that such bonds were ultra vires and void under New York Stock Corporation Law 1892, p. 1835, § 42, prohibiting any corporation from issuing bonds, except for money, labor, or property actually received for its use and lawful purposes, and were therefore not allowable against the corporation's estate in bankruptcy.

Petition for Revision of Proceedings of the District Court of the United States for the Western District of New York, in Bankruptcy.

For opinion below, see 128 Fed. 517.

See 118 Fed. 904.

Petition by trustee of bankrupt to review order of the District Court affirming order of referee adjudging that one Francis Bacon was the owner and holder of two bonds, of $500 each, issued by the Waterloo Organ Company, Bankrupt, and allowing his claim as a valid obligation against said company.

George E. Bartman, for petitioner.

J. N. Hammond, for respondent.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The Waterloo Organ Company was adjudicated an involuntary bankrupt in 1902. In 1894 it had made a second issue of bonds to the First National Bank of Waterloo, as trustee under a mortgage, and had deposited them with the trustee to be delivered by it upon the orders of the company as the bonds should be disposed of for corporate purposes. In 1891 Bacon, the president of said First National Bank, became a subscriber for 10 shares of the capital stock of said corporation, of the par value of $100 each, and afterwards received shares by way of scrip dividends, so that in July, 1898, he was the owner of 16⅘ shares. One Alexander C. Reed, who was practically the founder of the company, and its president, had promised Bacon that at any time when he was dissatisfied he would take his (Bacon's) stock off his hands. On July 16, 1898, Bacon told him he understood that stockholders had sold their stock for the purpose of getting out from under the stockholders' liability, and asked him to make good said promise; and on said day Reed bought said stock, and paid therefor by his note of even date payable to Bacon's order one day after date, for $1,000; and Bacon indorsed the note to the order of the secretary of said organ company, and delivered it to him, and received in exchange therefor an order upon the cashier of said First National Bank, trustee, for two bonds of the corporation, for $500 each, and, upon surrender thereof, received the bonds in question from the bank. Bacon was then president of said bank. On the same day he resigned his position as a director of the organ company. From that time until default by the company, the coupons upon said bonds were regularly collected by said Bacon, through the bank, in the ordinary course of business.

It appears that at the time of said transaction Reed was solvent. He was president of the organ company, and the owner of three-fourths of its stock. Said note was never collected, and was not entered among the bills receivable of the organ company, nor upon its annual inventory, prior to December, 1901; and the two bonds issued to Bacon were not entered upon the account of the bonded indebtedness of the organ company until that date, when the amount was charged to profit and loss. It is asserted, and not denied, that the copy of said order on the bank, and receipt for the bonds, were not entered in their regular place in the copy book of the organ company, but on the last page thereof. From this and other facts it is argued that the transaction between Bacon and Reed was a fraudulent scheme on the part of Bacon to get rid of his stock in exchange for the bonds. The testimony of Bacon is indefinite and contradictory.

The referee, who heard the witnesses, concluded that the facts as proved were insufficient to prove fraud, and especially that they failed to show any knowledge or information of fraud brought home to Francis Bacon, and that, if there was any fraud, it was a fraudulent scheme between the officers of the organ company to relieve Reed from the payment of his note. While we are not entirely satisfied as to the correctness of these conclusions, in view of the foregoing facts, we have not found it necessary to disturb said finding that fraud on the part of Bacon had not been proved.

Counsel for petitioners contends that these bonds are void because issued upon no consideration other than said note.

The statute of New York governing said corporation is as follows:

"No corporation shall issue either stock or bonds except for money, labor, or property actually received for the use and lawful purposes of such corporation. No such stock shall be issued for less than its par value. No such bonds shall be issued for less than the fair market value thereof." New York Stock Corporation Law 1892, p. 1835, c. 688, § 42.

It is insisted that this note was not "property actually received for the use and lawful purposes" of said corporation. It was not property in any practical sense. It was a mere piece of paper unless and until it was collected or otherwise availed of in securing some form of property. That it was not in fact received by the corporation for its use or lawful purposes, or with the intention thus to use it, may legitimately be inferred from the course of the president in failing to provide for its payment, and from the failure of the secretary of the company to enforce its collection or to inventory it among the assets of the company.

But even if it be assumed that this note was technically or potentially property, and that Bacon acted in good faith in the transaction, we think the issuance of the bonds for said note was in violation of the statute. The words "lawful purposes" are general in character, but would seem to mean such property as would be germane to or connected with the business purposes of the corporation, as defined in its charter or articles of incorporation. It must be assumed that the Legislature, by this carefully worded provision, intended to safeguard the rights of creditors and stockholders, and to insure that whatever indebtedness was incurred by the issuance of bonds should inure to the benefit of the corporation. It was certainly no part of the lawful purposes of this corporation to exchange its bonds for notes. If such an interpretation were permitted, it would nullify the whole purpose of the statutory provision. Inasmuch as no property was ever received by the company for its lawful use and purposes, and no benefit was obtained from the note given, it must be held that said issue was ultra vires and void.

We are not here concerned with the doctrine that the plea of ultra vires will not prevail in cases where the transaction is not forbidden by statute, where its effect will be to accomplish a legal wrong or to do injustice, and especially where the contract has been fully performed by one party, and the other party has received the full benefit of said performance. Missouri Pacific R. Co. v. Sidell, 35 U. S. App. 152, 67 Fed. 464, 14 C. C. A. 477; Memphis & L. R. Co. v. Dow (C. C.) 19 Fed. 393; Eastern B. & L. Ass'n v. Williamson, 189 U. S. 122, 129, 23 Sup. Ct. 527, 47 L. Ed. 735, and cases cited; Vought v. Eastern B. & L. Ass'n, 172 N. Y. 508, 65 N. E. 496, 92 Am. St. Rep. 761. In this case, as we have seen, the issuance of the bonds for the note was forbidden by law, and no benefit accrued to the corporation.

In Bath Gaslight Co. v. Claffy, 151 N. Y. 24, 45 N. E. 390, 36 L. R. A. 664, Chief Judge Andrews says:

"A corporation cannot enter into or bind itself by a contract which is expressly prohibited by its charter or by statute, and, in the application of this

principle, it is immaterial that the contract, except for the prohibition, would be lawful. No one is permitted to justify an act which the Legislature, within its constitutional power, has declared shall not be performed."

In Railway Companies v. Keokuk Bridge Co., 131 U. S. 371–389, 9 Sup. Ct. 770, 33 L. Ed. 157, Mr. Justice Gray, speaking for the court, says:

"It is proper to add that our judgment does not rest in any degree on the ground suggested in argument—that, the bridge contract and the lease having been executed, the Pittsburgh and Pennsylvania Companies, having received the benefits of them, are estopped to deny their validity, because, according to many recent opinions of this court, a contract made by a corporation, which is unlawful and void because beyond the scope of its corporate powers, does not, by being carried into execution, become lawful and valid, but the proper remedy of the party aggrieved is by disaffirming the contract, and suing to recover, as on a quantum meruit, the value of what the defendant has actually received the benefit of. Louisiana v. Wood, 102 U. S. 294, 26 L. Ed. 153; Parkersburg v. Brown, 106 U. S. 487–503, 1 Sup. Ct. 442, 27 L. Ed. 238; Chapman v. Douglas County, 107 U. S. 348–360, 2 Sup. Ct. 62, 27 L. Ed. 378; Salt Lake City v. Hollister, 118 U. S. 256–263, 6 Sup. Ct. 1055, 30 L. Ed. 176; Pennsylvania Railroad v. St. Louis, etc., Railroad, 118 U. S. 290, 317, 318, 6 Sup. Ct. 1094, 30 L. Ed. 83."

And in the leading case on this subject (Central Transportation Co. v. Pullman's Palace Car Co., 139 U. S. 24, 54, 55, 11 Sup. Ct. 478, 25 L. Ed. 55) Mr. Justice Gray, exhaustively reviewing the authorities on ultra vires, says:

"It was argued in behalf of the plaintiff that, even if the contract sued on was void, because ultra vires and against public policy, yet that, having been fully performed on the part of the plaintiff, and the benefits of it received by the defendant, for the period covered by the declaration, the defendant was estopped to set up the invalidity of the contract as a defense to this action to recover the compensation agreed on for that period. But this argument, though sustained by decisions in some of the states, finds no support in the judgments of this court."

This transaction, being one within the prohibition of the statute, is therefore void. "Contracts prohibited by statute, or declared illegal or void, or made in the exercise of a power expressly denied, are, of course, void, and the courts will not aid either party to them." Washington Life Ins. Co. v. Classon, 162 N. Y. 305, 310, 56 N. E. 755. New York State Loan & Trust Co. v. Helmer, 77 N. Y. 65; Pratt v. Short, 79 N. Y. 437, 35 Am. Rep. 531; Chapman v. Lynch, 156 N. Y. 551, 51 N. E. 275.

We have not discussed here the question as to the obligation of a corporation, which has received money or property under a contract which was beyond its powers, to refund such money or property before it can set up the plea of ultra vires, because, as stated above, we hold that no money or property was received by this corporation in exchange for said bonds.

The order of the District Court affirming the order of the referee is reversed, with costs.