## In re NEW YORK CAR WHEEL WORKS.

### (District Court, W. D. New York.    October 16, 1905.)

#### No. 1,570.

1. BANKRUPTCY—CORPORATIONS—VALIDITY OF NOTES.

    Evidence considered, and *held* insufficient to establish the invalidity of notes of a bankrupt corporation given in payment for stock of another corporation, which the purchaser had statutory power to buy, signed by the proper officer, and executed pursuant to a resolution of the board of trustees; it being shown that, although the bankrupt was insolvent at the time, the purchase might reasonably have been made to protect the interest which it already had in the second corporation, which was large, and there being no proof of fraud on the part of its officers or trustees to overcome the presumption of validity arising from the notes themselves, or to warrant the setting aside of the contract of purchase after it had been fully executed by the other party.

2. CORPORATIONS—INDORSEMENT OF NOTES—VALIDITY.

    An indorsement by a corporation of notes of another corporation is not an accommodation in a legal sense and void as ultra vires, but is a guaranty, based on a valuable consideration, and valid, where the indorsing corporation at the time owned all the stock of the other.

In Bankruptcy.   In the matter of the claim of the Ramapo Manufacturing Company.

Alexander & Green, for Ramapo Mfg. Co.

Fred D. Corey, for Trustee.

Rogers, Locke & Milburn, for Keystone Car Wheel Co.

HAZEL, District Judge.   This is a petition by the Ramapo Manufacturing Company to review the action of the special master appointed by the court to report as to certain claims.   I have examined the questions involved herein and am of opinion that the special master is correct in his conclusions.   There is nothing to be said additional to what is set forth in his able opinion, in which I concur.   The report of the special master is as follows:

GEORGE P. KEATING, Special Master. Two claims in this proceeding were presented for allowance to Referee Hotchkiss in favor of the Ramapo Manufacturing Company, and objections thereto were filed on behalf of the trustee and the Keystone Car Wheel Company. For certain personal reasons the referee considered himself disqualified to pass upon them, and so certified to the District Court. The claims were then referred to the undersigned, as Special Master, to hear the same and report to the court.

The claims are designated No. 1 and No. 2, and are for $25,000 and $4,359.09, respectively. Claim 1 is based on five certain promissory notes of the New York Car Wheel Works to the order of Ramapo Manufacturing Company, payable, respectively, one, two, three, four, and five years from the date thereof. The second is based on four certain promissory notes indorsed by New York Car Wheel Works, and made by the Ramapo Car Wheel Company, amounting to $4,526.52. Objections of the same character are filed against each of the claims, and the propriety of their allowance can be considered together. For convenience, the two car wheel corporations may be designated as New York and Ramapo; the Ramapo Manufacturing Company being designated as the Manufacturing Company.

On March 5, 1903, the date of the transaction in question, New York and Ramapo were domestic corporations. engaged in manufacturing and selling of car wheels; the New York at Buffalo, and the Ramapo Company at Ramapo, N. Y. The common stock of the Ramapo Company was mostly owned by the New York Company. The Ramapo Manufacturing Company, the claimant here, owned all the preferred stock of the Ramapo, to wit, 300 shares, par value $100, and was the owner of the plant which that corporation had leased for the purpose of carrying on its business. It appears that J. Fred Pierson, president of the Manufacturing Company, was at that time also president of the Ramapo Company, by virtue of the ownership by the Manufacturing Company of all the preferred stock of the Ramapo. It also appears that no officer of the claimant had any connection with the bankrupt New York Company as director, trustee, or stockholder. It appears negotiations had been had as far back as November, 1902, between officers of the New York and the Manufacturing Company in reference to the purchase by the New York of the preferred stock of Ramapo held by the Manufacturing Company. Evidence of such negotiation was received by the master as bearing upon the bona fides of the entire transaction. Evidence was also received as to the strained relations between the Manufacturing Company and the New York interests in the Ramapo Company, which might render the transaction under consideration a possibly advantageous one for the New York Car Wheel Works. It appears that on March 5, 1903, there was owing the Manufacturing Company from the Ramapo for accrued rent, taxes, etc., the sum of $4,526.52 as a consequence of which the Manufacturing Company had threatened removal proceedings. The New York Car Wheel Works, it should be borne in mind, was owner of the common stock of the Ramapo Company, and whether or not, in its judgment, this indebtedness should be taken care of to preserve possession of the plant, is another point which bears upon the bona fides of the entire transaction. It appears that the officers of the New York, who were also officers of the Ramapo, had expressed their desire for a new lease of the plant. As a result of all these negotiations, which have been not even briefly outlined, a final arrangement was entered into on March 5, 1903. This arrangement is embodied in certain resolutions of the Ramapo and New York Companies, passed at the meetings of those corporations held on that day in New York City. The Ramapo Manufacturing Company was to transfer the $30,000 preferred stock to the New York Car Wheel Works, forego any claims that it had against either car wheel company, and execute a new lease to the Ramapo Car Wheel Company. The New York Car Wheel Works was to deliver to the Ramapo Manufacturing Company its five notes for $5,000 each, indorsed by the Ramapo Car Wheel Company (being the notes which are the basis of claim No. 1); indorse the four notes of the Ramapo Car Wheel Company to the order of Ramapo Manufacturing Company, aggregating $4,526.52 (being the notes which are the basis of claim No. 2); and indemnify the Ramapo Car Wheel Company from liability on the $30,000 notes given by it to the City Bank. The

Ramapo Car Wheel Company was to indorse the five notes of New York Car Wheel Works aggregating $25,000, and execute its notes to the sum of $4,526.52.

The agreement embodied in these resolutions was thereafter executed and performed by all parties. The certificate representing the preferred stock was delivered by the Manufacturing Company to an officer of the New York Car Wheel Works, to wit, its vice president. The notes, as has previously been stated, were indorsed and delivered, and the indemnity agreement executed. On March 5, 1903, James R. Barnet, Howard C. Smith and Patrick H. Griffin constituted the board of trustees of the New York Car Wheel Works, while H. M. C. Vedder was its secretary and treasurer. The board of directors of Ramapo consisted of G. Fred Pierson, James R. Barnet, Howard C. Smith, Victor I. Cumnock, and Patrick H. Griffin; the directorate in each instance being composed, with the exception of Messrs. Griffin and Pierson, of nominees of corporate creditors. The testimony of these various directors, when examined at length, while showing evidence of insolvency in a very large measure, still does not establish to the mind of the master that the directors were acting otherwise than in good faith, or to the detriment of their trust, as their judgment advised. It seems to have been in the view of the directors of New York and Ramapo, either the adoption of this method or immediate destruction of Ramapo, and a consequent injury to New York, the owner of Ramapo's entire common stock. The fact that the majority of the boards represented creditors is surely persuasive of this conclusion.

The board of trustees of New York had for more than a year consisted of James R. Barnet, Howard C. Smith, and Patrick H. Griffin, while one H. M. C. Vedder had been its treasurer the same length of time. J. Fred Pierson, James R. Barnet, Howard C. Smith, Victor I. Cumnock, and Patrick H. Griffin constituted the board of Ramapo.

To quote the language of 3 Cook on Corps. 3926, "A general assumption of validity attends the acts of corporate directors at the outset, where nothing to the contrary appears." Has the trustee succeeded in removing this presumption? Aside from this rule the bankruptcy law provides that a prima facie case is made out by the proof of claim itself. The burden of removing this showing is placed upon the objectors. Such burden is also placed upon the objectors to the validity of these notes by section 35 of the negotiable instrument law of the state of New York (Laws 1897, p. 725, c. 612), providing that every negotiable instrument is deemed prima facie to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value. The notes and indorsements are signed by H. M. C. Vedder, the treasurer of the New York Car Wheel Works. The by-laws as amended by November 27, 1901, provide: "The treasurer shall sign all checks, drafts, notes, negotiable instruments and orders for the payment of money and he shall pay out and dispose of the same." In addition to this authority, the minutes of the meeting of March 5, 1903, specifically authorize the treasurer to sign the notes in question. To continue the quotation from Cook, 3926: "This presumption includes the presumption that the meeting of a board of directors, at which a given resolution was passed, was regularly convened." The trustee has sought to establish that Mr. Griffin was not notified of the Ramapo meeting of March 5, 1903. There is no positive evidence to that effect assuming that the meeting was not upon the regular meeting day fixed by resolution, which does not seem to the master has been established. The presumption of regularity has not been overcome.

New York was represented at this meeting by its officers, and a quorum was present. The notes were signed by the treasurer in accordance with the by-laws of the company. As is said in Cook on Stockholders, § 713a: "A party dealing with a corporation is not bound to inquire whether proper notice was given of a directors' meeting." The Supreme Court of the United States, in Louisville Ry. Co. v. Louisville Trust Co., 174 U. S. 552, 19 Sup. Ct. 817, 43 L. Ed. 1081, says: "One who takes from a railroad or business corporation, in good faith and without actual notice of any inherent defect,

a negotiable obligation issued by order of the board of directors, signed by the president and secretary in the name and under the seal of the corporation, and disclosing upon its face no want of authority, has the right to assume its validity, if the corporation could, by any action of its officers or stockholders, or both, have authorized the execution and issue of the obligation." In addition to the possession of the notes properly executed at the time the stock was delivered by Pierson, representing the Manufacturing Company, to the officers of the New York Car Wheel Works, who executed the notes in controversy, a certificate was delivered to him by the vice president and secretary and treasurer of the New York Car Wheel Works, which read as follows: "This is to certify that at a meeting of the trustees of the New York Car Wheel Works, held at No. 25 Pine street, New York City, on the 5th day of March, 1903, the following resolution was unanimously passed." Then followed the resolution, and the certificate was signed, "Attest: H. M. C. Vedder, Secretary." It is the duty of the secretary, as provided by the by-laws, to keep the minutes of the trustees, and to attend to giving and serving of notices of the company. It would therefore seem to follow that it was within the scope of the duties of secretary to issue the certificate above set forth, and that the company should be bound by the act of its secretary. A like certificate was relied upon, for the purpose of proving the regularity of a meeting, in Hutchison v. Real Estate Co., 65 S. C. 45, 43 S. E. 295. The court said: "The signing of the certificate was within the scope of his [the secretary's] employment, and, therefore, even if they were unauthorized and fraudulent on the part of the secretary, his action was nevertheless binding on the corporation."

As has been previously said, however, the master does not find any evidence specifically proving that the meeting was not regularly called, and therefore the burden of proving irregularity, which rests upon the objectors, has not been removed. The minutes of the various meetings offered in evidence disclose the fact that no notice is mentioned in any of such minutes. The by-laws of New York require that five days' notice of meeting shall be mailed. It certainly cannot be held that such provision is binding, where a custom is shown of sending short notices, and such custom is shown. And it further appears from the testimony of Barnet, Smith, and Vedder that an agreement had long existed between the trustees of New York that the meetings should be held weekly. In any event a quorum was present, and in County Court v. B. & O. (C. C.) 35 Fed. 161, while not necessary to a decision in that case, the court inclined to the opinion that such notice was not necessary, where a majority or a quorum was present. In Edgerly v. Emerson, 23 N. H. 555, 55 Am. Dec. 207, the court says of the above doctrine: "This ruling is, in our judgment, founded, not only on principles of common sense, but common justice."

It certainly is a strange position that the trustee of the New York Car Wheel Works complains of a lack of notice to Griffin, the president of that institution, against whom his efforts have been directed for his management of that institution ever since the commencement of the bankruptcy proceedings, and where counsel himself has stated, as appears in the minutes at page 233, that Griffin had been deposed of all management of the institution. The counsel for the trustee bases this statement upon the minutes of the trustees of the New York Car Wheel Works at Buffalo, November 24, 1902, where the authority of Griffin as an officer of the institution is very much curtailed. The New York Car Wheel Works had certainly all the powers vested in like corporations by the statutes of the state under which it was organized. Section 40 of the stock corporation law (Laws N. Y. 1892, p. 1834, c. 688) specifically provides that any stock corporation may purchase * * * the stock of any corporation, if the corporation whose stock is so purchased is engaged in a business similar to that of such stock corporation, or engaged in the manufacture, use, or sale of the property, or in the construction or operation of works necessary or useful in the business of such stock corporation, or in which, or in connection with which, the manufactured articles, product, or property of such stock corporation are or may be used. An examination of the certificates of incorporation of New York and Ramapo show that they are of such a character that each might pur-

141 F.—28

chase and hold under this provision the stock of the others by virtue of the similarity of their business.

The claim of ultra vires should not prevail in the present instance, for the additional reason that the agreement of sale as executed has been fully performed by the delivery of the certificate to the officers of the New York Car Wheel Works. As is said by the Supreme Court of the United States in Eastern Building Association v. Williamson, 189 U. S. 122, 23 Sup. Ct. 527, 47 L. Ed. 735. "It is now well settled that a corporation cannot avail itself of the defense of ultra vires when the contract has been in good faith fully performed by the other party, and the corporation has had the benefit of the performance and of the contract. * * * It may be that, while a contract remains unexecuted upon both sides, a corporation is not estopped to say in its defense that it had not the power to make the contract sought to be enforced. Yet, when it becomes executed by the other party, it is estopped from asserting its own wrong, and cannot be excused from payment upon the plea that the contract was beyond its power." It has already been seen that by the statute under which the New York was conducting its business this transaction was not forbidden. Therefore the notes should not be invalidated where the contract has been executed. As is said in Waterloo Organ Co., 134 Fed. 343, 67 C. C. A. 257, "Plea of ultra vires will not prevail in cases where the transaction is not forbidden by statute, where its effect will be to accomplish a legal wrong or to do injustice, and especially where contract has been fully performed, and the other party has received the full benefit of said performance." It cannot be found from the evidence that the officers of New York, who owned the common stock in the Ramapo, were acting in bad faith, and that the subsequent results, which have not been profitable, were sufficient evidence of fraud or bad faith on their part in purchasing stock in the Ramapo Car Wheel Company from the Manufacturing Company. Missouri Pacific v. Sidell, 67 Fed. 464, 14 C. C. A. 477; Memphis R. R. v. Dow (C. C.) 19 Fed. 393; Eastern Bldg. Ass'n v. Williamson, 189 U. S. 122, 23 Sup. Ct. 527, 47 L. Ed. 735; Vought v. Eastern Building Ass'n, 172 N. Y. 508, 65 N. E. 496, 92 Am. St. Rep. 761.

It is claimed by the trustee that J. Fred Pierson, president of the Ramapo Manufacturing Company, who, by virtue of the ownership of its preferred stock, was the president of Ramapo, wrung, through fraud and duress, the agreement and notes issued pursuant thereto from Ramapo and New York, respectively. Pierson was not an officer of New York. The fact that he was a member of the board of Ramapo directors, and that the other members of that board were trustees or directors of New York, while Pierson was not connected with that board, is surely insufficient to establish that Pierson is charged with such knowledge of the affairs of New York as to constitute a fiduciary relation between him and that company. The evidence does not establish that Pierson attended meetings of New York which would charge him with knowledge of the affairs of that company. It should be steadily borne in mind that no officers of New York were officers of the Manufacturing Company, and that the officers of New York testify emphatically that they were endeavoring to advance the best interests of that concern. The trustees having acted in good faith in purchasing the stock, the fact that the deal did not finally turn out successfully does not militate against the validity of the notes given for the purchase price, and no evidence of duress or fraud upon the corporation has been submitted which would justify the nullification of the purchase of the stock; there being sufficient evidence, as it appears to the Master, to establish that the new certificate of stock was legally delivered to New York. The certificate for 300 shares of preferred stock of Ramapo issued to New York is in due form, and came into the possession of the treasurer of New York. It was produced upon the hearing by the trustee of New York for surrender. So much for the five notes amounting to $25,000, issued for the purchase of preferred stock.

In addition to the objections already discussed, and which are overruled on the same grounds, the trustee claims that the four promissory notes, amounting in all to $4,359.09, made by Ramapo and indorsed by New York, cannot be enforced against the bankrupt, for the reason that New York is simply an accommodation indorser. It is undoubtedly true that a corpora-

tion cannot indorse for accommodation. Such indorsement, as is said in Morawetz on Corporations, 423, "rest upon no consideration, and would not be valid." They would amount to a donation of the corporate funds, and therefore an unlawful diversion. Were the indorsements upon which claimant relies as a basis for this claim accommodation in a legal sense?

New York had by a simultaneous transaction purchased the entire preferred stock of Ramapo. It was to her interest in the scheme for the continuance of that corporation that the pressing indebtedness of Ramapo to the claimant should be secured and legal proceedings to dispossess Ramapo averted. That result was accomplished by the execution and indorsement of the notes which are the basis of the claim. The indorsements were, therefore, a guaranty, and not an accommodation in the strict sense of the term. They were made for the benefit, as it appeared to the corporate officers, of New York, and not for the accommodation of Ramapo. As is said in C. R. & P. R. R. Co. v. Howard, 7 Wall. 392, 19 L. Ed. 117: "Private corporations may borrow money or become parties to negotiable paper in the transaction of their legitimate business, unless expressly prohibited." In Tod v. Kentucky Land Co. (C. C.) 57 Fed. 47, the court said: "There is no inherent want of power in a business corporation having the power to execute negotiable paper to obligate itself as a surety or guarantor." An indorsement is certainly such an obligation, and in the present case the obligation was incurred, not for the accommodation of Ramapo, but in the belief, mistaken perhaps, that the interests of New York were thus protected. This objection cannot therefore be sustained, and both claims are allowed as filed.

An order may be entered confirming the special master's report, with disbursements to the claimant, Ramapo Manufacturing Company, to be paid out of the bankrupt's estate.