There is evidence in the record that the value of Dr. Macumber's services was $1,000, and nowhere did the appellant, before the referee, urge that the charge was excessive or exorbitant, or offer any testimony to dispute the evidence of value.

There is no finding of the referee or the surrogate that these services were of the value ascribed to them. The decree allowing that sum to the administratrix should nevertheless be affirmed. Section 993 of the Code of Civil Procedure, as amended by chapter 85, Laws 1903, p. 237, authorizes the Appellate Division to pass upon a question of fact where that is necessary. That section provides, in part, as follows:

"The Appellate Division of the Supreme Court shall, on appeal from a judgment entered on the report of a referee, or the decision of a court on such trial, review all questions of fact and of law, and may either modify or affirm the judgment or order appealed from, award a new trial, or grant to either party the judgment which the facts warrant."

We are of the opinion that it should be taken as a fact in this case that the services rendered were of the value indicated. Section 2586 of the Code of Civil Procedure, relating to appeals from the Surrogates' Courts, provides:

"Where an appeal is taken upon the facts, the appellate court has the same power to decide the questions of fact, which the surrogate had; and it may, in its discretion, receive further testimony or documentary evidence, and appoint a referee."

Under the authority of the two sections we have quoted, it can hardly be doubted that we have the power to supply any finding of fact omitted from the referee's report or decision, and the surrogate's decree, essential to the case.

The view we take of the dispute renders it unnecessary to pass upon the legal questions discussed by the referee, upon which he sought to uphold the claim of the administratrix to the $1,000, which he finds had already been paid to Dr. Macumber. The decree should therefore be affirmed.

Decree of the Surrogate's Court of Kings county affirmed, with costs. All concur.

---

PEOPLE v. NEW YORK NAT. BUILDING & LOAN ASS'N.

In re CLARK.

(Supreme Court, Appellate Division, Second Department. June 10, 1904.)

1. BUILDING AND LOAN ASSOCIATIONS—CERTIFICATE—CONSTRUCTION—MATURITY—WARRANTY.

The certificate issued to a subscriber for shares in a building and loan association made no reference to any by-laws, but contained conditions by which the holder agreed to pay the association a certain sum monthly for each share until it matured or was retired. Borrowing members might withdraw shares after 6 months by giving 30 days' notice in writing, and would receive the amount of monthly dues paid, together with the profits apportioned thereto, though no more than one-half of the dues for any one month should be applicable to the demand of the drawing members. The certificate further provided that: "Once in six months profits arising * * * shall be apportioned among the shares in good standing. When-

ever the amount standing in the loan fund to the security of any share equals one hundred dollars such share shall be deemed to have matured"— and in display type was printed, "This certificate is guaranteed to mature in seven years from date, unless sooner retired." *Held* an express contract that the shareholder should at the end of said time, in any event, be entitled to withdraw the full sum of $100 per share.

Appeal from Special Term, Kings County.

Proceedings by the people of the state against the New York National Building & Loan Association in which Myron N. Clark files his claim with the receivers of such association. From a judgment dismissing his claim except to the extent of a certain value, said Clark appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

Thomas R. Hart, for appellant.

G. M. Fannin, for respondents.

HOOKER, J. On the 1st day of April, 1892, there was issued to the appellant, Myron N. Clark, a certificate that he had subscribed for and was the owner of 10 shares of stock in the New York National Building & Loan Association. The certificate was issued, and was accepted by the appellant, upon certain express terms and conditions. In those terms and conditions no reference whatever was made to any by-laws, rules, or regulations of the association, except those contained therein. Among the terms and conditions was one to the effect that the shareholder agreed to pay to the association 60 cents monthly for each share until such share matured or is retired, and that such payments must be made each month, in default of which certain fines and penalties attached. It was also provided that any nonborrowing member might withdraw one or more shares after 6 months by giving 30 days' notice in writing, and thereupon he would be entitled to receive the amount of the monthly dues paid into the loan fund on such shares, together with all profits that had been apportioned thereto, provided that at no time should more than one-half of the monthly dues received in any one month for the loan fund be applicable to the demand of the drawing members without the consent of the board of directors. The loan fund was provided to be at least 84 per cent. of the monthly payments. The ninth condition was as follows:

"Once in six months the profits arising from interest, premiums, fines, and other sources, shall be apportioned among the shares in good standing. Whenever the amount standing in the loan fund to the credit of any share equals one hundred dollars such share shall be deemed to have matured, and no more monthly payments shall be required."

And finally, printed in display type, was this language:

"This certificate is guaranteed to mature in seven years from date, unless sooner retired."

The appellant paid his first monthly dues on the 1st of April, 1892, and continued regularly without default to discharge his monthly obligation. On the 1st day of March, 1899, he paid the last installment of monthly dues, and on that day had regularly, for a period of seven years from the issuance of the stock to him, paid what was required of him

by his contract. On the 16th day of May, 1899, he duly demanded from the association the payment of the sum of $1,000, which he claimed was then due to him as representing the face or the withdrawal value of the 10 shares of stock he held. On the 28th day of July, 1899, an action was pending against the association, brought by the people of the state of New York, to obtain a judgment dissolving it, and on that day temporary receivers of the association were appointed, who then took possession of its property. This action resulted, on the 12th day of December, 1899, in a final judgment dissolving the corporation and appointing permanent receivers thereof. On the 21st day of March, 1900, the appellant filed his claim for the amount of $1,000 with the receivers, which was rejected. The claim was referred, and the referee has filed his report, upon which judgment has been entered declaring that the claim of Myron N. Clark for $1,000, matured value of his certificate, be dismissed, except as to the extent of $448.67, the book value thereof. From the order confirming the report, and from the judgment, Clark appeals to this court.

Evidence was taken before the referee tending to show that the association was in fact insolvent prior to the 1st day of March, 1899, when the appellant made his last monthly payment. A resolution of the board of directors of the association, passed December 2, 1898, received in evidence over the appellant's objection and exception, recited that :: was resolved, in order to protect the shareholders and the interests of the association, that it was necessary to charge against the various shares of stock 25 per cent. of the value of the loan fund of the association to meet certain losses and depreciations, and it was ordered that said charge of 25 per cent. be made against all shares of stock to meet such losses and depreciations. On the 22d day of March, 1899, a few days before the expiration of the seven years from the issuance of the appellant's stock, the board of directors passed another resolution, received in evidence over the same objection and exception, to the effect that, in order to protect the shareholders and in the interest of the association, the board of directors amended the resolution of December 2, 1898, and declared it to be necessary to charge against the book value of the various shares of the stock issued by the association, issued previous to the 2d of December, 1898, pro rata, an amount equal to 23 per cent. of the amount of the loan fund, and on that day said amount was directed to be used to meet those losses and depreciations. The resolution directed, accordingly, that the said charge of 23 per cent. be at once made against the said shares of stock issued and outstanding on that day.

No pretense is made that the appellant knew of or ever consented to be bound by those resolutions. The respondents make the claim that the language, in the terms and conditions attached to the appellant's certificate of stock, that the certificate was guarantied to mature in seven years unless sooner retired, is to be construed as the estimated length of time in which the association would earn money enough to mature the stock, or to apportion enough to this stock so that its share of the profits, added to the amount of monthly dues paid in, would amount to $1,000, and that because the association had met reverses and sustained losses, and had found it necessary to require all the stock to

contribute 23 per cent. of what had been paid in upon it, or, at least, of the sum that stood to its credit, in order to meet reverses, by reason whereof the plaintiff's stock, as appeared in the evidence, had at the time of his demand the value of about $448.67, that sum limits the amount of his lawful claim against the receivers.   It is difficult to understand by what reasoning the plain language of the guaranty may be contorted into sustaining the contention of the respondents.   It is true that one of the conditions upon which the association issued the stock, and the appellant received it, was that once every six months profits arising in the business of the association should be apportioned among the shares in good standing, and that, whenever the amount standing in the loan fund to the credit of any one share equalled $100, such share should be deemed to have matured; and it seems to be quite clear that had the language of the guaranty been omitted from the terms and conditions of the agreement between the association and the appellant, as evidenced by his certificate of stock, no share would have matured until such apportionments, together with the sums paid in monthly, had equalled the full sum of $100 per share.   It seems equally clear that the officers of the association, at the time this certificate was issued, believed that the association could earn enough money during the period of seven years so that the apportionment to these shares would be sufficient to entitle them to be retired, and with that supposition in view, and acting upon what they believed the business could and would do, guarantied to the appellant that his certificate would mature in seven years in any event.   If this language is not to be held to express a contract between the parties that the shareholder should at the end of seven years, in any event, be entitled to withdraw the full sum of $100 per share, it is difficult to imagine what language would have been sufficient to express such an intention.   The circumstances also point to the intention to make a contract of that character.   In Vought v. Eastern Building & Loan Association, 172 N. Y. 508, 65 N. E. 496, 92 Am. St. Rep. 761, a similar question was presented.   There a stockholder sued the association for the full matured value of his stock, after having paid his monthly dues regularly for the full term required.   From the opinion of Judge Martin in that case it appears that there the defendant agreed, upon certain considerations, to pay the shareholder the sum of $100 for each of his shares absolutely at the end of 78 months from the date thereof.   Upon the question we are now discussing, however, the following language is germane (page 515, 172 N. Y., and page 497, 65 N. E.):

"It is pertinent to inquire what object the plaintiff or her assignor could possibly have had in purchasing the stock, if she or he was to pay the full amount in cash, and then at the end of 11 years receive, without interest, only the principal which had been thus paid.   Obviously, the inducement to make such purchase was that the plaintiff and her assignor were to obtain a profit by thus investing their money, as one of the avowed objects of the association was to afford its members a safe and profitable investment of their savings."

Unless the language under consideration was to be taken as an explicit guaranty that the appellant's stock should mature in seven years— a guaranty of just what its language purports to be—no inducement existed to the appellant to put his money into the concern, except what

it might earn in its regular business. If the language expressed in truth an agreement to pay the full amount at the end of seven years, the value of the contract must be seen to be enhanced. We believe the intent of the parties was what the language of their undertaking expressed.

In this view of the contract between the parties, the evidence of insolvency prior to the maturity of the appellant's shares, and of the resolutions of the board of directors, seems to us immaterial. Our attention has been invited to no cases holding that the obligation of the association to Clark by virtue of this contract, after he had on his part complied with all of the conditions, differs from the obligation of an ordinary promise to pay money, and no such difference exists. It is said that insolvency is always a defense. That seems to be true in this case to the extent that the appellant will be entitled to receive from the receivers, as they wind up the affairs of the association, only his pro rata share of the $1,000; but the insolvency of the association, even prior to the time the appellant made his last monthly payments, it seems to us, can avail it by way of defense no more than its insolvency would be available as a plea to an action by the holder of a promissory note for $1,000 given as evidence of that amount of borrowed money. There is no apparent escape to the association from the adjudging of its liability to the full extent of $1,000 under this contract with the appellant. That the association's failure to earn money with which to mature the stock is no defense to such an action is the settled law of this state, and, under the authority of the Vought Case, supra, that adjudication must be held to determine that particular question adversely to the respondents.

The judgment and order appealed from must therefore be reversed.

Judgment reversed, and new trial granted before a referee to be appointed by the Special Term; costs to abide the event. All concur.