(60 Misc. Rep. 227.)

## DOUBLEDAY, PAGE & CO. v. SHUMAKER.

(Supreme Court, Special Term, New York County.  July, 1908.)

1. ACCOUNT STATED (§ 11*)—WHAT CONSTITUTES—CONCLUSIVENESS.

Two of three persons jointly interested in the same business bought out the interest of the third person, computing the same on a certain basis, and thereafter one of the remaining parties contracted to buy out the other on a certain basis with the provision for readjustment if the computation appeared unjust to either by a certain time when it was supposed definite data could have been obtained. The data was still inadequate at that time, but a computation was made and money and a note given for the price, the buyer expressing dissatisfaction at the time and the seller agreeing a further readjustment on an ascertainment of other facts. *Held*, that the buyer could subsequently demand a readjustment, in accordance with the seller's promise, to recover back whatever had been paid in excess of the amount due as subsequently appearing.

[Ed. Note.—For other cases, see Account Stated, Dec. Dig. § 11.*]

2. ACCOUNT STATED (§ 1*)—WHAT CONSTITUTES.

In order to constitute an account stated, there must be a mutual examination of the claims of the respective parties and a balance struck and an agreement either express or implied that the balance is correct, and that the party against whom it is found will pay it.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. § 2; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 1, pp. 93–98; vol. 8, p. 7561.]

3. CORPORATIONS (§ 487*)—ULTRA VIRES CONTRACTS.

The defense of ultra vires to the claim of a corporation only applies to an executory, and not to an executed, contract.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1893; Dec. Dig. § 487.*]

Action by Doubleday, Page & Co. against Frank W. Shumaker for an accounting. Judgment for plaintiff.

Kellogg, Beckwith & Emery (Frederic R. Kellogg, of counsel), for plaintiff.

Sidney Rosenbaum, for defendant.

ERLANGER, J. On January 22, 1904, plaintiff, a corporation, entered into an agreement with the defendant and one Middlebrook, under which the defendant and said Middlebrook, were to conduct a mail order department in plaintiff's business. The capital required was to be furnished two-thirds by plaintiff and one-third by the others named. The profits or losses were to be divided in two equal parts, the plaintiff to share in one of such parts and the defendant and said Middlebrook in the other. Both the defendant and Middlebrook were to receive fixed salaries, and, in the event of either drawing beyond the compensation agreed upon, the excess was to be charged against their share of the profits. The agreement was to continue from year to year with the understanding that the one withdrawing was to have his or its interest in the profits reduced according to the terms fixed by the writing. On January 13, 1905, the agreement referred to was modified as to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the manner and proportion of the investments. The parties continued under the modified plan until February 25, 1905. On that day plaintiff and the defendant purchased the interest of Middlebrook, and the existing contract was further revised so that, among other things, defendant's interest was increased to three-eighths and the plaintiff's to five-eighths. By this last revision it was provided that if, on April 1st, the sales for the month of March did not equal a sum which would make the entire expenses only one-third of the total sales, the agreement was to end automatically, and the profits or losses, as shown by the books, were to be divided according to the respective interests in the proportion of three-eighths and five-eighths. The writing stipulated further for a termination of the compact at the end of June, if the expense on the first of any intervening month should be more than one-third of the total sales for the preceding month, unless renewed. Under the agreement so revised plaintiff and defendant continued until May 23, 1905, when a new one was made, and under it plaintiff agreed to purchase the interest of defendant on July 1, 1905, on the same basis as was employed when the interest of Middlebrook was purchased. The terms of the sale were set forth, and it was among other things provided that:

"All 'undelivered orders' and portions of orders on hand July 1, 1905, taken by the mail order department prior to July 1, 1905, shall be included in the inventory at fifty per cent. (half) of their retail sale value. If the returns or losses show that this way of settlement is unjust to either side, the matter will be readjusted according to the facts which developed by August 15, 1905."

It appears from the evidence that the business was rather of an uncertain, if not of a precarious, character. Custom was obtained by means of advertisements and circulars sent out broadcast to the public and orders for books and pictures were obtained by such method. The success of the business depended largely upon the whim of the purchasing public. When inquiries were made either in response to advertisements or of circulars, books or pictures were sent on approval. If the article was retained, it could be paid for in cash with a discount or in installments covering a period of from six to eighteen months or beyond that time. The purchasers upon this plan might pay the whole price or they might retain the goods and not pay for them, or they might pay part and default as to the balance, or again, they might after the lapse of some time return them either in a soiled condition or otherwise so damaged as to require in respect of the books rebinding. In the latter event, the loss would be the cost of rebinding plus the expense of sending and returning. All these elements added uncertainty to the business, and this condition existed on May 23d, when defendant's interest was purchased. It was believed by the parties that between July 1st and August 15th the fairness of their bargain could be ascertained and the latter date was fixed as the time of readjustment, if it was then ascertained that the method of settlement was unjust to either side. The writing among other things is silent as to outstanding accounts and delivered orders, but they, of course, were included in the sale. It was not possible on June 30, 1905, to determine what the actual value of the mail order

department was, and, according to the evidence, the feat was not practicable on the day of the trial so far as concerned the business transacted prior to July 1st, the day on which it was agreed to purchase defendant's interest, because books were still being returned and collections going on. Up to August 10, 1905, on account of this situation the plaintiff became somewhat alarmed as the day for completing the purchase was close at hand. Between May 23d and August 15th the claim is made by plaintiff that numerous discussions were had with the defendant on the subject.

Plaintiff contends that the defendant always answered the objections urged in that regard by a promise to readjust if it developed that he was overpaid his share as fixed by the agreement of sale. In any event, some time prior to August 15th Middlebrook, who possessed special knowledge of the business, prepared a statement from which it appeared that the value of defendant's interest on June 30, 1905, amounted to $30,275.81, with the added interest. The largeness of the estimate was a complete surprise to plaintiff, and through its president objection to its accuracy was made, and the defendant is alleged to have again assented to a readjustment and to repay the amount which might be overpaid to him on the settlement. Plaintiff was still unsatisfied, and it seems that its president repeated his fears about the correctness of the inventory, because returns were still coming in. In this condition of affairs the unconditional payment of this large sum which was to be paid on August 15th might subject the plaintiff to considerable loss, bounded by the overpayment to the defendant of his correct proportionate share in the business. Thereupon plaintiff maintains that the sale contract of May 23d, which originally provided for the payment to defendant of the amount found to be due to him in 10 monthly installments, and which before the document was executed was changed to "ten monthly notes," was on August 15th or thereabouts modified so as to provide that the plaintiff should deliver to the defendant one check for $2,000 and 14 notes for the balance of the purchase price, which were delivered to the defendant on that day upon the understanding that the notes were to be held by him or by Middlebrook subject to the readjustment of the account in the future as the facts would develop   In accordance with this understanding, the check and notes were delivered and the defendant acknowledged receipt thereof on the writing itself as being in "full settlement of this contract." Between the 15th of August, 1905, and the 22d of that month, plaintiff's president again spoke to the defendant on the subject of a readjustment, and thereupon on the date last mentioned the defendant wrote to the plaintiff the following letter:

"To record the substance of what I said this morning I will repeat. Regardless of what the books or statements may show from time to time, we will postpone all discussion of our recent settlement when you purchased my interest in the mail order department until the February 1, 1906, statement has been completed, say about March 1, 1906. At that time we will open up the settlement for readjustment, and, if it is proven that I have received more than the facts and figures warrant, I will cheerfully and gladly repay you such excess."

This letter contained the following acceptance:

"Accepted August 22, 1905; Doubleday, Page & Company, S. A. Everett, Treas."

On March 1, 1906, it appears that the returns of books and losses exceeded the estimate which formed the basis of the settlement, and, plaintiff's demand for an accounting having at that time been refused, this action was brought to restrain the disposition of the notes then unpaid and for an accounting. It seems to me that this letter establishes that the settlement of August 15th was tentative only, and was subject to be reopened if it appeared on March 1, 1906, that an overpayment was made.

In reaching this conclusion, it was not necessary to consider the conversations had prior to May 23, 1905, nor have I done so. It was contended upon the trial that all conversations leading up to the contract of sale were merged in the writing. This as an abstract proposition is unquestioned. But, as it was asserted by plaintiff that the instrument did not express all the terms of the transaction, the evidence was admitted provisionally. It requires no citation of authorities to show that parol evidence is admissible to prove such omissions, but I repeat it. was not deemed necessary by me to consider the same. The letter of August 22d refers to a conversation had on that day concerning the very subject that had disturbed the plaintiff, and I am of the opinion that subsequent to the agreement of May 23d and down to August 15th the matter was frequently discussed, and that the defendant did promise a readjustment, as is evidenced by his letter, to which reference has already been made. The proof in that regard clearly preponderates in favor of plaintiff, and establishes unmistakably that the defendant accepted the notes upon the inventory or estimate presented on August 15th with the purpose and intent to make restitution if it afterward· was ascertained that he had been overpaid: The letter written at the time was undoubtedly inspired by motives of the highest honor, for he, defendant, was dealing with associates in whom he professed the greatest confidence, and like confidence was reposed by them in him. His testimony that he·wrote the letter in a spirit of generosity, and because he believed that his future dealings with the plaintiff would result beneficially to him, is challenged by the situation which then existed. Whether the letter was wrung from him or was his voluntary act is of no consequence. I cannot understand why this letter has been characterized as a new agreement, nor do I appreciate the reasons which moved the treasurer of the plaintiff in marking his acceptance thereon. The whole transaction as it is viewed by me was a continuous one, and the letter at most extended in writing the period of readjustment, and the question of a consideration to my mind is hardly involved. If the parties prefer to put upon the letter the stamp of an agreement additional to the one of May 23, 1905, so as to give to it greater solemnity, even then there can be no doubt that it is sufficient for that purpose and that it is binding upon them. To defeat the effect of the letter it is the defendant's contention that it is a nudum pactum, that the settlement made on August 15th is in

the nature of an account stated and as such is final upon the parties, and that the letter in no way impairs the legal effect of such settlement. And it may here be noted that it is also defendant's contention that the conversations referred to by me as having occurred between May 23d and August 15, 1905, are all merged in the account stated, and that as such conversations tend to alter, vary, and contradict the said account they were for that reason incompetent. I do not understand that the strict rules of evidence applicable to written contracts apply alike to an account stated. The latter is not so final that its effect may not be assailed. "An account thus stated is not conclusive upon either party, but is simply prima facie presumptively correct and may be impeached for any error induced by fraud or mistake." Samson v. Freedman, 102 N. Y. 699–701, 7 N. E. 419; Lockwood v. Thorne, 18 N. Y. 285; Young v. Hill, 67 N. Y. 162–172, 23 Am. Rep. 99. If the agreement to readjust had not been made, the account could nevertheless have been attacked if subsequent error or mistake was discovered. Bergen v. Hitchings, 22 App. Div. 395–398, 48 N. Y. Supp. 96. In this case the arrangement before any payment was made was found to be quite impossible without serious financial loss, and so the right of readjustment was postponed to a later date to avoid the very loss of which plaintiff now complains. The evidence was competent. "In order to constitute an account stated, there must be a mutual examination of the claims of the respective parties and a balance struck, and there must be an agreement, either expressed or implied, that the balance is correct, and that the party against whom it is found will pay it. Spellman v. Muehlfeld, 48 App. Div. 265, 62 N. Y. Supp. 746; Rand v. Whipple, 71 App. Div. 62–69, 75 N. Y. Supp. 740. Within this rule, despite the fact that notes and a receipt in full were given, there has been in no sense such an account stated as to exclude the recovery of the money paid in excess of that actually due. There was no absolute or unconditional promise to pay the money at all events. Part of the notes were in fact paid, and suits are pending against the plaintiff to recover on the others, but the agreement to readjust survived the transaction, and the letter of August 22d concludes the defendant, and he cannot be permitted to repudiate his promise of reimbursement. The parties have themselves determined the effect of the August 15th transaction, and their construction of the understanding is controlling. Woolsey v. Funke, 121 N. Y. 92, 24 N. E. 191; Sattler v. Hallock, 160 N. Y. 301, 54 N. E. 667, 46 L. R. A. 679, 73 Am. St. Rep. 686; Nicoll v. Sands, 131 N. Y. 24, 29 N. E. 818.

I am further of the opinion that there existed between the parties either a technical copartnership or at least such a joint adventure as to be governed by the same rules. It may be that a corporation cannot enter into a partnership with an individual (People v. N. R. S. R. Co., 121 N. Y. 623, 24 N. E. 834, 9 L. R. A. 33, 18 Am. St. Rep. 843), but the defense of ultra vires to the claim of a corporation only applies to an executory and not to an executed contract (Vought v. Eastern Bldg. & Loan Ass'n, 172 N. Y. 508, 65 N. E. 496, 92 Am. St. Rep. 761). See, also, Rider Life Raft Co. v. Roach, 97 N. Y. 378; Catsk-ill

Bank v. Gray, 14 Barb. 471–478. In Turner v. Weston, 133 N. Y. 650–654, 31 N. E. 91, 92, it was said:

"It is not important to define the precise legal relations which the plaintiff and defendants sustained to each other in the business. If not strictly a partnership, it was certainly a joint enterprise, and the rights and obligations of the parties are to be determined and adjusted upon the rules and principles applicable to partnership relations."

See, also, Wilcox v. Pratt, 125 N. Y. 688–691, 25 N. E. 1091; Marston v. Gould, 69 N. Y. 224; Schulsinger v. Blau, 84 App. Div. 393, 82 N. Y. Supp. 686.

When the action was brought, its purpose among others was to enjoin the defendant from disposing of the notes. That relief was cognizable in equity only. It seems that the defendant had disposed of them before the action was brought, so that to that extent no judgment can be rendered. But the right to an accounting, even though the relationship between the parties ended by the agreement of purchase and sale, may still be had, for that also survived the particular relationship.

Plaintiff is entitled to an interlocutory judgment accordingly. Submit findings and judgment.